**John T. FLOWER**

v.

**FEDERAL BUREAU OF INVESTIGATION et al.**

**No. SA–76–CA–349.**

United States District Court, W. D. Texas, San Antonio Division.

March 16, 1978.

---

Maury Maverick, Jr., San Antonio, Tex., for plaintiff.

Jamie C. Boyd, U. S. Atty., Jeremiah Handy, Asst. U. S. Atty., San Antonio, Tex., for defendants.

## MEMORANDUM ORDER

SUTTLE, District Judge.

The Plaintiff has brought this suit under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking to compel the Federal Bureau of Investigation (FBI) to release certain documents from its files. The Plaintiff also seeks an award of attorneys' fees as provided in 5 U.S.C. § 552(a)(4)(E). Jurisdiction is vested in this court under 5 U.S.C. § 552(a)(4)(B).

At the time this suit was brought, the FBI was withholding portions of sixty-five documents [1] on the basis that they fell within one or more of the following exemptions provided by § 552(b) of the Act: (b)(2) (internal personnel practices); (b)(5) (inter-agency memorandums); (b)(7)(C) (investigatory records that would constitute an invasion of personal privacy); and (b)(7)(D) (disclose the identity of a confidential source).

On October 12, 1977, this court issued an order requiring the Defendants to submit forty-six documents for *in-camera* inspection accompanied by an indexing that met the requirements detailed in *Vaughn v. Rosen*, 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974); the Defendants were also required to provide the Plaintiff with a copy of the indexing by November 12, 1977. Since the Defendants had previously submitted their motion for summary judgment, the court required the Plaintiff to submit his cross-motion by December 15, 1977.

The Defendants submitted the documents on December 1, 1977. However, on November 14, 1977, the court was advised that the FBI had released to the Plaintiff much of the withheld information. Twenty-one documents were released in their entirety; the remainder were released with minor deletions.[2] With one exception, the deletions were alleged to be warranted by either (b)(2), (b)(7)(C), or (b)(7)(D). Portions of one document were withheld pursuant to (b)(1) (classified material).

The Act clearly places the burden on an agency to sustain its actions whenever it withholds information under any of the exemptions provided by § 552(b). Furthermore, these limited exemptions "do not obscure the basic policy that disclosure, not secrecy is the dominant objective of the Act." *Department of Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). With these tenets in mind, the court has conducted its *in-camera* inspection. Many documents contain more than one deletion; many documents have more than one exemption in issue. Therefore, in undertaking its review, the court has attempted to evaluate each exemption as it applies in each instance where it is claimed. In order to clarify the results of this process, part one of this order examines the exemptions individually and then summarizes the court's findings as to the deletions made pursuant to the section in question. The second part of this order details the reasons why the court finds that the Plaintiff is entitled to an award of attorney's fees.

### I

### *b(1)*

 This exemption is designed to protect matters that are properly classified under Executive orders "to be kept secret in the interest of national defense." The Defendants have claimed this exemption justifies the deletion of two paragraphs from document # 20. In support of their posi-

---

1. Some of the documents were identical to one another; thus, there were actually only fifty-seven distinct documents in issue.

2. Allowing for those documents that were identical to one another, there remained thirty-six documents with deletions for the court to consider.

tion, the Defendants have furnished the affidavit of Special Agent Willie E. Stewart. Agent Stewart was the agent who, having been authorized to classify FBI documents pursuant to Executive Order 11652, made the determination that such portions of the document properly should be classified "confidential" and withheld from release. The affidavit supports a finding that the classification was procedurally correct. Further, the Plaintiff has not challenged the procedural correctness of the classification, and there is no evidence that the classification was done in anything less than good faith. These are the only areas into which a court can legitimately inquire: even though it might question the basis of wisdom of an individual decision, a court has neither the experience nor the expertise to determine whether such a classification is substantively correct. *See Environmental Protection Agency v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *Schaffer v. Kissinger*, 164 U.S.App.D.C. 282, 505 F.2d 389 (1974).

█ The court finds that document # 20 has been properly classified and the FBI is entitled to withhold the deleted paragraphs from that document.

### b(2)

█ This exemption is designed to protect matters "related solely to the internal personnel rules and practices of an agency." The Defendants have claimed this exemption to justify deleting a file number that appears on page 1 of document # 20. It has also been used to justify deletions of internal administrative markings on certain documents previously released to the Plaintiff and not submitted for *in-camera* inspection. The oft-quoted test regarding application of Exemption b(2) is that it "exempts from disclosure only routine 'house-keeping' matters in which it can be presumed the public lacks any substantial interest." *Vaughn v. Rosen*, 173 U.S.App.D.C. 187, 192, 523 F.2d 1136, 1141 (1975). Careful review of the documents reveals that the deletions made by the Defendants fall within the scope of this exemption; the file

markings clearly relate to internal matters to which neither the Plaintiff nor the public can claim a substantial interest. The court finds, therefore, that the b(2) deletions in documents # 3, 13, 15, 19, 20, 28, 50, 51, 52, 61, and 62 are proper.

### b(7)(C)

This exemption protects investigatory records compiled for law enforcement purposes, but only to the extent that production of such records would "constitute an unwarranted invasion of personal privacy." Most of the deletions made pursuant to this exemption were names of FBI personnel involved in the report; certain other deletions were made, however, to protect the privacy of individuals subject to either separate or further investigation, or individuals who had furnished information to the FBI.

█ The court finds these deletions fall within the scope of the exemption. The deletions were made from records that were clearly compiled for law enforcement purposes and, in the case of law enforcement personnel, are necessary to protect FBI agents and investigations from the hazards of public disclosure. Although the Defendants concede that disclosure of these names would not expose the agents to any threat of physical harm, the government has demonstrated more than a legitimate set of reasons to justify the deletions, not the least of which is the disruption that such disclosure might bring both to ongoing and future FBI investigations as well as to the personal lives of the agents involved. Nor has the Plaintiff been able to demonstrate any legitimate interest in making these names public that outweighs the need for privacy. The same holds true regarding those names deleted from the documents because the individuals were merely the focus of a separate investigation or, either willingly or not, were subjects for questioning in any investigation of the Plaintiff. Individuals who give information to law enforcement officers have a legitimate interest in their privacy; further, it is doubtful that many would be willing to give information at all if they could not be as-

sured of such privacy. *See*, e. g., *Shaver v. Bell*, 433 F.Supp. 438 (N.D.Ga.1977). Accordingly, the court finds the deletions made in documents # 4, 5, 6, 9, 12–23, 29, 46, 47, 48, and 55, pursuant to b(7)(C) are proper.

### b(7)(D)

This exemption also protects investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would "disclose the identity of a confidential source"; and, when information was gathered in the course of a criminal investigation or a lawful national security intelligence investigation, "confidential information furnished only by the confidential source." The purpose of this exemption is clear: "[it] was plainly intended to protect the disclosure of the identity of informants, and information received from informants." *Committee on Masonic Homes, Etc. v. N.L.R.B.*, 414 F.Supp. 426, 433 (E.D.Pa.1976), vacated on other grounds, 556 F.2d 214 (3rd Cir. 1977). *See* also *Luzaich v. United States*, 435 F.Supp. 31 (D.Minn.1977); *Philadelphia Newspapers, Inc. v. U. S. Dept. of Justice*, 405 F.Supp. 8 (E.D.Pa.1975). "Therefore, once it is established that the author of the information in question was indeed a confidential source, both his identity as well as all of the information related by him are exempt under this section." *Shaver v. Bell, supra,* at 441.

An examination of the documents reveals that the deletions made pursuant to b(7)(D) in documents # 4, 21, 22, 23, 25, 29, 33, 35, and page three of document # 43, clearly fall within this exemption. However, the Defendants are not justified in their use of this exemption with regard to deletion "2a" on page two of document # 43 and to all of the information deleted in document # 44. Upon review of these documents the court finds no evidence that these deletions reflect information derived from a confidential source or could in any way reveal the identity of a confidential source. Therefore, the Defendants must make available to the Plaintiff the deleted portion of page two in document # 43, and document # 44 in its entirety.

## DOCUMENTS NOT COVERED ABOVE

Document # 27 is a copy of a Fifth Circuit opinion concerning the Plaintiff. Rather than release it, or cite an exemption to justify withholding it, the Defendants referred the Plaintiff to the Clerk of the Court for a copy of the opinion. The document is in the file that the FBI maintained on the Plaintiff; it is not covered by an exemption and thus must be released.

Document # 10 is a two-page document: page one is an internal FBI transmittal letter withheld pursuant to b(2); page two is a memo from the Department of the Army that was withheld for referral to the Department of the Army for determination as to disclosure and direct release. The court finds that withholding page one is justified by virtue of the b(2) exemption. However, page two is a document contained in the file that the FBI maintained on the Plaintiff; no exemption has been cited to justify withholding it and thus it must be released.

## SUMMARY

Documents # 1, 2, 8, 11, 24, 26, 30, 34, 36, 37, 38, 40, 41, 42, 45, 49, 53, 54, 56, 57, 58, 59, and 60 have been released to the Plaintiff in toto. Therefore, insofar as these documents are concerned, this case is moot.

The Defendants' motion for summary judgment is granted insofar as it concerns documents # 3, 4, 5, 6, 7, 9, 10 (page one only), 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 25, 28, 29, 31, 32, 33, 35, 39, 43 (page three only), 46, 47, 48, 50, 51, 52, 55, 61, 62, 63, 64, and 65; insofar as it concerns documents # 10 (page two only), 27, 43 (page two only), and 44, the motion is denied.

The Plaintiff's motion for summary judgment is granted insofar as it concerns documents # 10 (page two only), 27, 43 (page two only), and 44; in all other respects the motion is denied.

## II

The FOIA provides that a district court "may assess against the United

States reasonable attorney fees . . . in any case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). Application of this provision to any given case requires a two-part analysis: first, whether a Plaintiff has "substantially prevailed" within the meaning of the Act; and, if so, whether an award of attorneys' fees would then be proper. It is clear that the district courts have been given broad discretion in conducting case by case inquiries. *See Nationwide Building Maintenance, Inc. v. Sampson*, 182 U.S.App.D.C. 83, 559 F.2d 704 (1977). Nevertheless, certain guidelines have emerged since § 552(a)(4)(E) was added to the FOIA by the 1974 amendments. Of primary importance to this case is the recognition that a Plaintiff may have "substantially prevailed" even if final judgment was not granted in his favor. *Nationwide Building Maintenance, Inc. v. Sampson, supra; Vermont Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509 (2d Cir. 1976); *MCA, Inc. v. Internal Revenue Service*, 434 F.Supp. 212 (C.D.Cal.1977); *Burke v. Department of Justice*, 432 F.Supp. 251 (D.Kan.1976); *Pope v. United States*, 424 F.Supp. 962 (S.D.Tex.1977); *American Federation of Government Employees, AFL-CIO v. Rosen*, 418 F.Supp. 205 (N.D.Ill. 1976); *Goldstein v. Levi*, 415 F.Supp. 303 (D.D.C.1976).

▬ The above cases reflect a belief that when the government voluntarily releases a large number of documents prior to any final court decision, a plaintiff has, in effect, prevailed: he has been denied documents in the possession of a federal agency, filed suit, and while the litigation was pending, the defendants surrendered [most of] the demanded documents. *Rosen, supra* at 209. The basis for this construction is clear:

The purpose of [552(a)(4)(E)] was to encourage private citizens to bring to the attention of the courts any unlawful withholding of information by government agencies. Clearly, this purpose would be defeated and frustrated if plaintiffs were forced to forfeit their claim upon surrender of the materials before formal action by the judge. As Judge Thomas A. Flannery of the Court noted [*Communist Party of the United States v. Department of Justice*, C.A. 75-1770 (D.D.C.1976) (unpublished opinion)]:

"If the government could avoid liability for fees merely by conceding the cases before final judgment, the impact of the fee provision would be greatly reduced. The government would remain free to assert boilerplate defenses, and private parties who served the public interest by enforcing the Act's mandates would be deprived of compensation for the undertaking."

*Goldstein v. Levi, supra* at 305.

This court endorses these principles without reservation. The history of this suit shows that the Plaintiff first sought the information in his FBI file on July 1, 1975. After the initial release proved unsatisfactory and all administrative procedures had been exhausted, the Plaintiff brought this suit on March 11, 1976. Not until this court ordered an *in-camera* inspection nineteen months later did the Defendants release virtually all of the requested material. While it is true that the court has upheld most of the remaining deletions, that does not alter the fact the Plaintiff has successfully obtained the documents he sought, less a few minor deletions. Further, it can hardly be said that he would have obtained these documents without this suit.[3] He has, therefore, substantially prevailed.

▬ Not all prevailing parties receive attorneys' fees; rather, a four part test has

---

**3.** Indeed, this situation is virtually identical to, and indistinguishable from, that in *Exner v. FBI*, 443 F.Supp. 1349 (C.D.Cal.1978). In *Exner* the plaintiff, although not entirely prevailing in the final judgment, received most of the documents she sought when the FBI released them—some with minor deletions—prior to

that judgment. There, as here, the final judgment upheld most of the deletions. Nevertheless, the court awarded the plaintiff attorneys' fees for reasons that directly bear on the issue before *this* court:

As far as causative effect is concerned, *the court has no doubt that this action was di-*

been used to determine whether a court should exercise its discretion and make an award. The test has derived from the legislative history to the 1974 FOIA Amendments and involves balancing the following factors:

(1) The benefit to the public, if any, deriving from the case;

(2) the commercial benefit to the complainant;

(3) the nature of the complainant's interest in the records sought; and

(4) whether the government's withholding of the records sought had a reasonable basis in law.

*Pope v. United States*, 424 F.Supp. at 965. *See Nationwide Building Maintenance, Inc. v. United States*, 559 F.2d at 710–716 for a thorough discussion of these factors.

▆▆▆▆ Applying these factors to this case, the court finds that the Plaintiff is entitled to attorneys' fees. These documents dealing with FBI coverage of an individual and an organization, the American Friends Service, during a period of domestic turbulence and upheaval add important information to the public domain. Their importance to the public lies not so much in whether they reveal that FBI activity was or was not widespread or intrusive, but rather in what they add to the collective knowledge about our society and the Government's activity in it. Some may find these documents reassuring; others may find them frightening; and, still, many others may not find them worth considering at all. Perhaps most important is that they can be found in the first place.[4] Finally,

the other factors reveal that this suit was not brought for commercial benefit and that the complainant's standing is similar to that of a private attorney general. As for the basis in law of the deletions, the court repeats its earlier finding that, although the Government obviously had a basis for many of the deletions subsequently upheld, many other documents were released without an evaluation of the legal sufficiency of the original claimed exemptions. Under these circumstances, this fact does not diminish the Plaintiff's claim to an award. The Plaintiff's motion for attorneys' fee is granted.

The parties are directed to consult with one another and submit a stipulation as to reasonable attorneys' fees by March 27, 1978. If the parties cannot agree on a stipulated amount, the Plaintiff will submit a motion for an award of attorneys' fees supported by itemized affidavits, taking into consideration the factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See also Wolf v. Frank*, 555 F.2d 1213 (5th Cir. 1977), and cases cited therein. This motion must be submitted on or before April 3, 1978. The Defendants will respond to this motion within ten days after being served.

The documents submitted for *in-camera* inspection will remain sealed in the courthouse vault pending final disposition of this case.

---

*rectly responsible for delivery of the documents plaintiff received.* The government contends that plaintiff's suit did not facilitate the production of any information that she otherwise would not have received in due time. This may or may not be true; there is no proof as to what, if any, information eventually would have been produced in the absence of this action. Even assuming the government's contention is correct, the purpose of the lawsuit was to compel immediate production of documents in the government's possession. The government seems to suggest in its argument that an action affecting only the timing of production does not meet

the test for an award of attorney fees. Section 552(a)(4)(E) contains no such limitation, nor does the legislative history suggest Congress desired one. *The key is whether there is a substantial causative relationship between the lawsuit and the delivery of information.*
443 F.Supp. at 1353 (emphasis added).

4. The court wishes to make it absolutely clear that it finds that the Government has acted in complete good faith throughout this suit. An award of attorneys' fees simply reflects the value of the suit and not the conduct of the Defendants.