Nathan KATZ, Plaintiff,

v.

The DEPARTMENT OF JUSTICE,
Defendant.

No. 76 Civ. 5813 (MJL).

United States District Court,
S. D. New York.

Aug. 17, 1979.

Eugene Prosnitz, Axelrod & Warburgh, New York City, for plaintiff.

Robert B. Fiske, Jr., U. S. Atty., S. D. New York, New York City, for defendant by Gaines Gwathmey, III, Asst. U. S. Atty., New York City.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

Plaintiff, Nathan Katz, brings this action pursuant to the provisions of the Freedom of Information Act (FOIA), 5 U.S.C. Section 552 (hereinafter, "the Act"), to compel disclosure of materials in possession of the Federal Bureau of Investigation (hereinafter, the "FBI").

By letter of counsel dated August 15, 1975, plaintiff requested the Deputy Attorney General, Department of Justice, to make available the following materials pursuant to the Freedom of Information Act and the applicable regulations of the Department of Justice:

> All records containing information about Nathan Katz or referring to Mr. Katz in any way which are possessed by the FBI, including, but not limited to letters, memoranda, tape recordings, electronic surveillance logs and investigative reports.

By letter dated May 18, 1976, the Director of the FBI denied plaintiff's request in part by withholding in their entirety an unspecified number of records and deleting portions of those records which were released.[1]

By letter of counsel dated June 8, 1976, plaintiff appealed to the Attorney General from the decision of the FBI. By letter dated September 30, 1976, the Deputy Attorney General affirmed the action of the Director of the FBI.

Plaintiff commenced this action on December 3, 1976. The complaint alleges that the FBI wrongfully refused to disclose the withheld records to plaintiff despite his entitlement to them under the Freedom of Information Act. The complaint prays that the defendant be ordered to produce the

---

1. The FBI located 11 documents, 25 pages in all, covered by this request and released 16 pages thereof to plaintiff. The material furnished to plaintiff was retrieved from a file compiled in 1954 and 1955 by the FBI as part of a criminal investigation arising out of plaintiff's alleged connection with Communist Party activities. Memorandum in Support of the Government's Motion for Summary Judgment at 2. The FBI's May 18, 1976 letter informed plaintiff that deletions had been made from these documents and that 9 pages covered by plaintiff's request were being withheld in their entirety.

records in their entirety. The complaint also asks that plaintiff be awarded reasonable attorneys' fees and other litigation costs and disbursements as provided for in 5 U.S.C. Section 552(a)(4)(E). The Government contends that the withholdings and deletions were proper pursuant to the exemptions set out in Section 552 of the Act.

On May 2, 1977, plaintiff served upon the Government extensive interrogatories seeking, *inter alia*, information concerning the nature of the documents withheld and the exemptions in the Act justifying such withholdings. At a conference before the Court (Conner, J.) on May 6, 1977, the Government furnished to plaintiff an affidavit of FBI Special Agent Edwin Yee, sworn to March 10, 1977 which set forth the administrative proceedings which preceded this action and the nature of each of the documents or portions thereof withheld with the exemptions relied upon for the withholdings.

On June 10, 1977 plaintiff, through his attorneys, notified the Government of his contentions concerning the necessity for additional responses to the interrogatories beyond the information supplied in the March 10, 1977 Yee affidavit. On August 19, 1977 the Government served upon the plaintiff its Answers and Objections to the interrogatories.

At a conference on September 16, 1977 the Court (Conner, J.) directed that the Government re–examine its responses to plaintiff's interrogatories to determine whether additional information could be provided. On November 23, 1977 the Government served and filed Supplemental Answers and Objections to the Interrogatories in question.

The Government has now moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Government contends that the Yee affidavit and the Government's Answers and Objections to plaintiff's interrogatories establish as a matter of law the absence of any dispute as to the withheld documents and deletions and establish the Government's entitlement to withhold the materials.

The Government bases its refusal to provide the plaintiff with the disputed materials on three separate exemptions set out in Section 552(b) of Title 5. These are, respectively, Section 552(b)(2), Section 552(b)(7)(C), and Section 552(b)(7)(D).

By order dated April 19, 1979, this Court exercised its discretion pursuant to 5 U.S.C. Section 552(a)(4)(B) and ordered the defendant to submit the disputed documents for *in camera* inspection.

This Court has carefully examined a copy of each original document submitted *in camera* and has determined that some of the exemptions asserted by the Government were proper, and that some were not.

■ The Freedom of Information Act places the burden on an agency to sustain its actions whenever it withholds information under any of the exemptions provided by Section 552(b). *Flower v. Federal Bureau of Investigation*, 448 F.Supp. 567 (N.D. Tex., 1978). Furthermore, these limited exemptions "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Department of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). The Court has conducted its *in camera* inspection with these tenets in mind. Most of the documents in question and indeed most of the pages of each document contain more than one deletion; in some cases, the Government claims more than one exemption for a given deletion. In undertaking its *in camera* inspection, the Court has attempted to evaluate each exemption and to summarize its findings with respect to the deletion or withholdings made pursuant to that exemption.

(b)(2)

■ Exemption (b)(2) exempts from disclosure information "related solely to the internal personnel rules and practices of an agency." The materials for which this exemption was claimed consist largely of administrative notations relating to the internal processing of the materials in plaintiff's file. These notations consist of the initials

of FBI personnel responsible for approving or handling the documents, administrative markings such as file numbers, date stamps, or markings for routing, indexing, retrieval or dissemination to FBI or other law enforcement offices and personnel. The Court has found that the descriptions provided of these deletions were accurate and that the deletions were properly made pursuant to the (b)(2) exemption.

■ Various transmittal memoranda were also withheld. These documents which were sometimes withheld in their entirety contain administrative information with respect to other documents which were released. However, some of these memoranda also contain substantive information relating to plaintiff, and where that is the case, that information must be released. The information, which appears in the second and third columns of pages 10, 11, and 12 of Document 3 must be made available to plaintiff.[2]

The Court is troubled by the Government's claimed exemption for "lead materials"–statements which indicate possible future investigative steps or approaches or suggested courses of action. Although the Government withheld various materials pursuant to the (b)(2) exemption on the ground that they constitute "lead materials" it has offered no specific legal authority to support this application of that exemption. Several federal courts have questioned or rejected the argument that "lead materials" should qualify for the (b)(2) exemption. See *Ferguson v. Kelley*, 448 F.Supp. 919, 925 (D.Ill. 1978); *Day v. F.B.I.*, 76 Civ. 3209 (Unpubl. opinion) (S.D.N.Y. March 10, 1977, Knapp, J.).

Although the Supreme Court has not yet had occasion to consider that precise issue, it has recently considered the general scope of the (b)(2)–exemption. In *Department of the Air Force v. Rose, supra*, the Court held that:

[A]t least where the situation is not one where disclosure may risk circumvention of agency regulation, Exemption 2 is not applicable to matters subject to ... a genuine and significant public interest. ... [T]he general thrust of the exemption is simply to relieve agencies of the burden of assembling and maintaining for public inspection matters in which the public could not reasonably be expected to have an interest.

*Id.* 425 U.S. at 369–70, 96 S.Ct. at 1603.

In that case, the Court held that case summaries of disciplined Air Force cadets were clearly of public interest and could not be withheld pursuant to the (b)(2) exemption.

The legislative history of the Act is similarly instructive as to the scope of the (b)(2) exemption. The Senate Report of the bill which became the Act stated:

Exemption No. 2 relates only to the internal personnel rules and practices of an agency. Examples of these may be rules as to personnel's use of parking facilities or regulations of lunch hours, statements of policy as to sick leave, and the like. S.Rep.No. 813, 89th Cong., 1st Sess. 8 (1965) as quoted in *Department of the Air Force v. Rose, supra*, at 463, 96 S.Ct. at 1600.

■ An often quoted test regarding application of (b)(2) is that it exempts from disclosure only routine "housekeeping" matters in which it can be presumed the public lacks any substantial interest. *Vaughn v. Rosen*, 523 F.2d 1136, 1141 (D.C.Cir. 1975). Applying the principles set forth above, the Court is of the opinion that parts of two documents were improperly withheld by the defendants pursuant to the (b)(2) exemption.

Page 2 of Document 4 was withheld in its entirety pursuant to the (b)(2) exemption on the ground that it contained "only administrative information relating to the conduct of the investigation and the reporting of it." This Court is of the opinion, however, that the material contained in page 2 reveals the substance of the agency's efforts both in monitoring plaintiff's activities and in possibly influencing them. Document 5,

2. The reference to a third party may however be deleted pursuant to the (b)(7)(C) exemption.

which consists of one page, was also withheld pursuant to the (b)(2) exemption. Although that document deals partly with the administrative classification of plaintiff's files, it also contains substantive information which the investigation revealed concerning plaintiff.

This Court is of the opinion that the substantive information set forth above is, under the standard delineated in *Department of the Air Force v. Rose, supra,* of genuine and significant public interest. It sheds light on how the FBI proceeds in investigating a person allegedly connected with certain organizations. See *Ferguson v. Kelley, supra,* at 922. The defendant is ordered to make available to plaintiff page 2 of document 4 and the second two paragraphs of Document 5 which contain substantive information about plaintiff's activities.

### (b)(7)(C)

Exemption (b)(7)(C) exempts files compiled for law enforcement purposes but only to the extent that the disclosure of such files would "constitute an unwarranted invasion of personal privacy." Material which was deleted pursuant to this exemption falls into a number of categories.

Deletions were made of information which would reveal the identity of agents and law enforcement personnel who took part in the investigation of plaintiff or who at some time had responsibility for handling plaintiff's files. The Government has argued that the names of such individuals must be withheld in order to protect them from physical danger and unnecessary non–official questioning and harassment.

It has frequently been held that the proper analysis under the (b)(7)(C) exemption is to balance the public interest in the disclosure of such information against the privacy invasion involved. *Ferguson v. Kelley,* 455 F.Supp. 324, 327 (N.D.Ill. 1978), citing *Nix v. United States,* 572 F.2d 998 (4th Cir. 1978); *Flower v. Federal Bureau of Investigation,* 448 F.Supp. 567 (W.D.Tex. 1978);

*Tarnopol v. F.B.I.,* 442 F.Supp. 5 (D.D.C. 1977).

■ This Court has difficulty in identifying any public interest that would be served by the identification of the names of particular individuals involved in the investigation of plaintiff or involved in the handling of plaintiff's file. The Government, in each instance, has disclosed as far as possible the substance of the information furnished by these individuals, deleting only information which would identify the individuals themselves.

The Court finds that the deletion of the names or other identifying information with respect to agents or other law enforcement personnel was proper.

Other deletions were made to eliminate the names of various third parties associated in some way with plaintiff. Release of the names of these individuals is not necessary to the release of the substantive material concerning plaintiff, and the Court is of the opinion that the privacy of these individuals should be protected.

Therefore, the Court finds that the (b)(7)(C) exemption was properly claimed to prevent the disclosure of the names of these individuals.

■ In several instances, specifically on pages 7 and 8 of Document 3, the Government has asserted this exemption to withhold information relating to one Nathan Katz on the ground that it is not known whether that Nathan Katz is identical to plaintiff. On balancing the public interest in the substance of the information deleted against the privacy interest of a Nathan Katz whom the Government asserts may be a person other than plaintiff, the Court is of the opinion that the information should be disclosed and must be made available to plaintiff.[3]

### (b)(7)(D)

Exemption (b)(7)(D) exempts investigatory records compiled for law enforcement

---

**3.** The deletions in question appear at: Document 3, p. 7, the last two paragraphs; p. 8, the first paragraph; and p. 8, the first paragraph under "Miscellaneous." The Government may, however, delete the names of third parties mentioned in that paragraph.

purposes, but only to the extent that production of such records would "disclose the identity of a confidential source"; and when information was gathered in the course of a criminal investigation or a lawful national security intelligence investigation, (b)(7)(D) exempts, "confidential information furnished only by the confidential source."

The Government has claimed the (b)(7)(D) exemption for information furnished by individuals, and for information furnished by various agencies and organizations, some of which are law enforcement agencies, and some of which are not. In some cases, the identity of the source only was omitted. In other cases, however, the substantive information itself was omitted on the ground that disclosure of the information would reasonably be predicted to reveal the identity of the source.

The legislative history of the 1974 Amendments to the Freedom of Information Act offers some guidance as to the scope of the term "confidential source" and also sheds light on the extent to which information furnished by these sources may be properly withheld. The Joint Explanatory Statement of the Comm. of Conference, Conference Rep. No. 93–1200, 93d Cong., 2d Sess., reprinted in [1974] U.S. Code Cong. & Admin.News, pp. 6267, 6285, 6291, states that:

> The substitution of the term "confidential source" [for the term "informer"] in section 552(b)(7)(D) is to make clear that the identity of a person other than a paid informer may be protected if the person provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred. Under this category, in every case where the investigatory records sought were compiled for law enforcement purposes–either civil or criminal in nature–the agency can withhold the names, addresses, and other information that would reveal the identity of a confidential source who furnished the information. However, where the records are compiled by a criminal law

enforcement authority, *all* of the information furnished only by a confidential source may be withheld if the information was compiled in the course of a criminal investigation. In addition, where the records are compiled by an agency conducting a lawful national security intelligence investigation, all of the information furnished only by a confidential source may also be withheld. The conferees intend the term "criminal law enforcement authority" to be narrowly construed to include the Federal Bureau of Investigation and similar investigative authorities. Likewise, "national security" is to be strictly construed to refer to military security, national defense, or foreign policy. The term "intelligence" in section 552(b)(7)(D) is intended to apply to positive intelligence–gathering activities, counter–intelligence activities, and background security investigations by governmental units which have authority to conduct such functions. By "an agency" the conferees intend to include criminal law enforcement authorities as well as other agencies. Personnel regulatory, and civil enforcement investigations are covered by the first clause authorizing withholding of information that would reveal the identity of a confidential source but are not encompassed by the second clause authorizing withholding of all confidential information under the specified circumstances.

In the affidavit of Edwin Yee, in support of the claimed exemptions under (b)(7)(D), Mr. Yee states that these deletions "were made to prevent disclosure of the names and identifying details concerning persons who furnished information on an express or implied basis of confidentiality." (Affidavit of Edwin Yee, March 10, 1977 at 8.) The Government's brief asserts that this information was furnished on a stated or implied basis of confidentiality and that "[this] information was received from confidential informants with the understanding that it would be held in strictest confidence. It is only with this understanding that such individuals can be protected and can be persuaded to continue valuable assistance in

the future." (Memorandum in Support of the Government's Motion for Summary Judgment at 8.)

■ This Court is of the opinion that the deletion of the names of individuals was proper pursuant to the (b)(7)(D) exemption. The release of the identity of these individuals or the release of information which could be predicted to reveal their identities could subject such individuals to danger of personal harm or harassment and could seriously impede the ability of the Department of Justice to obtain information vital to law enforcement investigations.[4] See *Curry v. Director, Drug Enforcement Administration,* No. 75–1416 (Unpubl. opinion) (D.D.C. Nov. 5, 1976, Green, J.).

However, other withholdings and deletions made pursuant to this exemption were names of law enforcement agencies and other organizations and agencies who furnished information concerning plaintiff's activities. In several instances, both the names of the organizations and the information furnished by them were deleted. Since plaintiff's records were compiled during the course of a criminal investigation conducted by the FBI–a criminal law enforcement agency within the meaning of Section 552(b)(7)(D), all of this information may be properly withheld if the organizations which furnished the information are deemed "confidential sources" within the meaning of the statute.

The federal courts which have considered the issue are not in agreement as to whether the term "confidential source" in Section 552(b)(7)(D) is limited to persons or encompasses agencies and organizations. In *Church of Scientology v. United States Department of Justice,* 410 F.Supp. 1297 (D.C. Cal. 1976), the court held that the section does not refer exclusively to persons, but extends to any confidential source and held that when the United States Drug Enforcement Administration furnishes information to the Department of Justice, it would be considered to be a "confidential source" within the meaning of the statute.

On the other hand, in *Ferguson v. Kelley,* 448 F.Supp. 919, it was held that the term "confidential source" applies only to *persons* providing information under an express or implied assurance of confidentiality, and does not apply to entities such as corporations, credit bureaus, or other organizations, including law enforcement agencies.

In *Church of Scientology, supra,* in holding that the (b)(7)(D)–exemption *is* applicable to law enforcement agency sources, the court focused on the legislative history and the political realities which surrounded the passage of the 1974 Amendments. The court thus described those factors:

> The opponents of the Hart amendment feared that the disclosure of law enforcement records would undermine confidentiality. In response to those concerns, the term source was substituted for informer in order to "provide a wider degree of protection." *Id.* at 459. Despite that substitution and other accommodations, President Ford vetoed the bill, in part because he believed that "confidentiality would not be maintained." *Id.* at 484. In response to the attacks, the sponsors of the amendments assured the Congress that, "We have been most careful to protect . . . law enforcement interests to the utmost in the bill we passed." *Id.* at 440. In order to secure an override of the Presidential veto, it was necessary to convince the legislature and the public that no legitimate law enforcement interest had been compromised. Most persuasive in this regard was the statement of Senator Hart in his effort to sustain an override of the President's veto:

> > The major change in conference was the provision which permits law enforcement agencies to withhold "confidential information furnished only by a confidential source." In other words, the agency not only can withhold information which would disclose the identity of a confidential source but also can provide blanket protection for any information supplied by a confidential

---

**4.** A number of these deletions are also exempt under the (b)(7)(C) exemption which prevents disclosure of information which would unnecessarily invade privacy.

source. The President is therefore mistaken in his statement that the FBI must prove that disclosure would reveal an informer's identity; *all the FBI has to do is to state that the information was furnished by a confidential source and it is exempt. Id.* at 451 (emphasis added).

Again Senator Hart told the Congress that, "One of the reasons given by the President for his veto is that the investigatory files amendment which I offered would hamper criminal law enforcement agencies in their efforts to protect confidential files. We made major changes in the conference to accommodate this concern." *Id.* at 450–451.

■ Thus the sponsors of the amendments, and the Congress following in step, believed that the Hart amendment would protect the confidential files of law enforcement. There was no argument raised to support the proposition that confidential information provided by law enforcement agencies was any less important to the mission of federal law enforcement than information provided by ordinary citizens. In light of the legislative history, it is clear that the Congress did not intend to throw open the confidential files of law enforcement to the general public, and its intent to protect against disclosure of confidential information extends to material provided by any confidential source including law enforcement agencies.

*Id.* at 1302–03 (Footnotes omitted).

■ This Court, concurring with the analysis set forth above, holds that the (b)(7)(D) exemption is applicable to law enforcement agency sources. Therefore, the Court finds that the names of state and local law enforcement agencies which furnished information concerning plaintiff, and the information furnished by them was properly withheld pursuant to that exemption.

The Court is of the opinion, however, that the other state and local organizations which furnished information concerning plaintiff do not qualify–as "confidential sources" for purposes of (b)(7)(D).

The rationale which would exempt files of a law enforcement agency does not apply to these other agencies. The Court is of the opinion that making available to plaintiff the information which these agencies have supplied concerning his activities does not give rise to the danger which concerned the opponents of the 1974 Amendments that the confidential files of law enforcement agencies would be opened to the public and that law enforcement interests would be compromised. With respect to these organizations this Court concurs with the analysis offered in *Ferguson v. Kelley*, 455 F.Supp. at 326–27 wherein the court rejected the application of the (b)(7)(D) exemption to credit bureaus,[5] stating that

Defendants have presented no new arguments why the term "source" should encompass corporate entities. We reiterate that a corporate source simply is not as concerned as an individual with the disclosure of its identity and does not have the same expectation of privacy. We conclude that the possibility of losing such sources of information because of disclosure is slight. Thus, the policy of insuring an uninterrupted flow of information to the government is not significantly hampered, and the FOIA policy of disclosure is furthered.

The defendant is therefore ordered to produce the names of these non–law enforcement agencies and to produce the information which they supplied concerning the plaintiff.[6]

Plaintiff seeks an award for reasonable attorneys' fees and other litigation costs

---

5. This Court, however, does not concur with the conclusion in *Ferguson v. Kelley*, 455 F.Supp. 324, that the term "confidential sources" is limited to individuals.

6. The deletions referred to appear at:
   –Document 3, p. 1, the last sentence of the "Synopsis"; p. 2, lines 1–2 and line 1 under paragraph C; p. 6, paragraph 5; p. 8, paragraph 2, and line 2 under the paragraph "Description"; and
   –Document 4, p. 1, last sentence of paragraph 3; and
   –Document 12, p. 1, paragraph 2 and 5.

and disbursements incurred in the prosecution of this action.

■ The Freedom of Information Act provides that a district court "may assess against the United States reasonable attorney fees ... in any case ... in which the complainant has substantially prevailed." 5 U.S.C. Section 552(a)(4)(E). The application of this provision to any given case requires a two–fold analysis: first, whether a plaintiff has "substantially prevailed" within the meaning of the Act; and if so, whether an award of attorneys' fees would then be proper. *Flower v. Federal Bureau of Investigation, supra*, at 573. The district courts have been given broad discretion in conducting case by case inquiries to determine whether an award of fees is warranted. *Id.*, see *Nationwide Building Maintenance, Inc. v. Sampson*, 559 F.2d 704 (D.C. Cir. 1977).

The Court is of the opinion that plaintiff has "substantially prevailed" in this action. In determining that plaintiff has "substantially prevailed," this Court has taken into consideration not simply the quantity of information which it has directed the Government to produce, but it has also considered the quality of that information. Most of the Government's deletions which this Court has upheld relate to notations of a purely administrative nature, or information relevant to a third party- an FBI agent or informant related to plaintiff's case, or other individuals related to plaintiff. However, many of the deletions were of important substantive material which the Court has ruled must be released to plaintiff. These materials reveal the manner and the substance of the Government's surveillance and investigation of what was, in many instances, plaintiff's mere exercise of his constitutionally guaranteed rights. Some would find this information troubling; some may find it shocking. The Court is of the opinion that it is important that the information will be made available.

The fact that this Court finds that plaintiff has substantially prevailed in this action does not necessarily entitle him to an award of attorneys' fees. Section 552(a)(4)(E) contemplates a reasoned exercise of the court's discretion taking into account all relevant factors. *Nationwide Building Maintenance, Inc. v. Sampson, supra*, at 704. In *Vermont Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509 (2d Cir. 1976) the Second Circuit held that in order to obtain an award of attorney fees in a Freedom of Information Act case, a plaintiff must show at minimum that the prosecution of the action could reasonably have been regarded as necessary and that the action had a substantial causative effect on the delivery of the information. The Court is of the opinion that both of these conditions have been met in the instant case. At no time prior to the institution of plaintiff's action did the Government indicate that the material which had been withheld would be released voluntarily. Thus plaintiff's action was clearly necessary to obtain disclosure of further information. There is also no question that the action had a substantial causative effect on the delivery of the information.

Several federal courts have utilized a four part test to determine whether a court should exercise its discretion to make an award of attorneys' fees in a case brought pursuant to the Freedom of Information Act. The test has been derived from the legislative history to the 1974 Amendments to the Act[7] and involves balancing, among other factors:

(1) The benefit to the public, if any, deriving from the case;

(2) the commercial benefit to the complainant;

(3) the nature of the complainant's interest in the records sought; and

(4) whether the government's withholding of the records sought had a reasonable basis in law.

*Flower v. Federal Bureau of Investigation, supra*, at 573–74, citing *Pope v. United States*, 424 F.Supp. at 965.

---

7. See *Nationwide Bldg. Maintenance, Inc. v. Sampson, supra*, for a discussion of the legislative history.

In the instant case the information which the Government has been directed to disclose concerns FBI surveillance and investigation of an individual. This information adds important knowledge to the public domain, and adds to the collective knowledge of our society and the Government's activity in it. See *Flower v. Federal Bureau of Investigation, supra,* at 574. This suit was not brought for plaintiff's personal commercial benefit rather, plaintiff's standing is similar to that of a private attorney general. *Id.* Although plaintiff clearly has a direct personal interest in the material sought, in the sense that it relates to his own life and activities, his own interest coincides with the public interest in maximum feasible access to government information—the very purpose of the Freedom of Information Act. Finally, although the Government did have a reasonable basis in law for the deletion of some of the material which it withheld, the Court is of the opinion that other deletions were made without sufficient or proper analysis.

▇ The basic policy of the Freedom of Information Act is to encourage the maximum feasible public access to government information, and the fundamental purpose of Section 552(a)(4)(E) is to facilitate citizen access to the courts to vindicate their statutory rights. *Nationwide Bldg. Maintenance, Inc. v. Sampson, supra.* All too often, the barriers presented by attorneys' fees and court costs are insurmountable for the average person seeking to obtain information under the Act. Evaluating the circumstances of the instant case in light of these fundamental legislative policies, this Court is of the opinion that plaintiff's motion for attorneys' fees and costs should be granted.

Plaintiff's counsel is directed to submit within 30 days, a statement of attorneys' time and expenses incurred in this action with supporting affidavits for a determination of reasonable fees and costs.

In conclusion, defendant's motion for summary judgment is granted in part and denied in part. Defendant is ordered to make available to plaintiff those documents or portions of documents which this Court has found to have been improperly withheld.

All documents which have been submitted to the Court for *in camera* inspection are to be filed and kept under seal.

So ordered.