Elias P. DEMETRACOPOULOS,
Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGA-
TION, Defendant.

Civ. A. No. 78–2209.

United States District Court,
District of Columbia.

Jan. 30, 1981.

William A. Dobrovir, Washington, D. C.,
for plaintiff.

Dennis Dutterer, Asst. U. S. Atty., Wash-
ington, D. C., for defendant.

**530** ▉

## MEMORANDUM

**HAROLD H. GREENE, District Judge.**

This is an action under the Freedom of Information Act (5 U.S.C. § 552) and the Privacy Act (5 U.S.C. § 552a) in which the plaintiff seeks to compel the disclosure of FBI files pertaining to him. A substantial amount of material was released administratively but a number of documents were withheld in whole or in part. The parties have filed voluminous memoranda and other documents and the Court has heard oral argument.

### I

▉ The FBI defends the withholding of many of the documents under the national security exemption to the Freedom of Information Act (Exemption 1) and that of others under the law enforcement exemption (Exemption 7). The principal issue with regard to these exemptions is whether the Federal Bureau of Investigation is and has been acting in good faith. In this regard, plaintiff claims that there were and are no legitimate national security or law enforcement reasons either for the government's investigation of him or for the government's present withholding of the files. In his view, that investigation was "bogus from the beginning,"[1] and designed solely to discredit him as an opponent of State Department policy toward Greece. These assertions are not frivolous on their face,[2] and the Court must therefore resolve the good faith issue.

In this connection, plaintiff requests, and the FBI vigorously opposes, an *in camera* inspection of the relevant documents. The Court has carefully reviewed the documents filed on behalf of defendant, including the affidavits of FBI Special Agents James H. King and Jerry M. Graves, and it has concluded that it cannot rely on these papers alone in making its decision. The affidavits and other document submitted by defendant are insufficiently specific to permit the drawing of definitive conclusions, particularly in light of the basic conflict referred to above. Accordingly, the Court has conducted an *in camera* inspection of the disputed documents.

▉ Twenty-three documents have been withheld, in whole or in part, under the national security exemption.[3] All of these documents were classified in accordance with the procedural requirements of Executive Orders 11652 and 12065. As concerns substance, defendant contends, and its affidavits aver, that release of the documents could reasonably be expected to cause identifiable damage to the national security.[4] The standard of review with respect to classified documents has been fixed a number of times by the U.S. Court of Appeals for this Circuit. As that court stated in *Halperin v. CIA, supra,* at 148,

> [t]he court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions: to do so would violate the principle of affording substan-

---

1. Alternatively, it is said that the investigation may have been valid initially but became illegitimate later when the FBI at various times considered but rejected its termination.

2. Plaintiff quotes from various released documents which, he claims, demonstrate that the Department of State and the Central Intelligence Agency were primarily interested in his role as a critic of U.S. policy, and he has shown that the FBI several times considered ending the investigation.

3. The government has a right to keep intelligence matters secret. See, *e. g., Snepp v. United States,* 444 U.S. 507, 100 S.Ct. 763, 62 L.Ed.2d 704 (1980); *Halperin v. CIA,* 629 F.2d 144 (D.C. Cir. 1980).

4. The information withheld was claimed to include the identity of sources in foreign governments or international organizations and sources or methods providing information regarding specific foreign relations activities of the United States. It was claimed that disclosure of such sources or methods could, among other things, breach assurances of confidentiality afforded the sources; curtail the flow of information from them; harm foreign relations; cause the expulsion of U.S. officials, or reprisals against U.S. citizens; bring about countermeasures by hostile intelligence agencies; precipitate a break in diplomatic relations; or cause physical or other disruption in the lives of foreign officials, and even the death of sources.

tial weight to the expert opinion of the agency. Judges, moreover, lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case. (footnotes omitted).[5]

To be sure, the court's remarks were made in cases where the trial courts had ruled strictly on the papers, without the benefit of an *in camera* inspection. However, the limited scope and competence of judicial officers is as true in the one situation as in the other, and the rule of deference applies *a fortiori* where the Court has actually viewed the documents.

Within this general framework, the Court must still consider, however, whether release on national security by the agency is made in bad faith, where, as is true here, the agency's statements are called into question by some contradictory evidence. See *Halperin, supra*, at pp. 147, 148. Similarly, Exemption 7 is not available if the documents in question were not compiled "for law enforcement purposes," that is, if the agency was not gathering the information in the good faith belief that the subject may violate or had violated federal law. Cf. *Weissman v. CIA*, 565 F.2d 692, 694–95 (D.C. Cir. 1977).

Plaintiff asserts that the FBI inquiry here was conducted for the purely political purpose "to 'get' something on an embarrassing opponent of the State Department policy favoring the Greek dictatorship"[6] —obviously not a legitimate law enforcement reason. Defendant claims, to the contrary, that the investigations of plaintiff were conducted strictly for law enforcement purposes. The Court has examined the documents with this conflict between the parties in mind.

■ It is necessary, first of all, to draw a distinction between the purpose of the investigation and the purpose of the act of withholding the documents. Even if it were true, as plaintiff claims, that the investigation was bogus, it would not necessarily follow that he would be entitled to the release of all the documents irrespective of the consequences in terms of the types of injury described in note 4 *supra*. Thus, the identity of sources could well be subject to withholding under Exemption 1 (or possibly Exemption 3) even if the particular investigation in which the source participated did not meet the FOIA standards.[7] Some of the material sought by plaintiff is in this category and may be subject to withholding on that basis alone.

In any event, the Court finds, based upon its review of the documents, that the investigation of plaintiff by the FBI was not a mere sham designed to intimidate or embarrass him in his role of critic of Greek or American policy. The information available to the FBI could lead a reasonably prudent government official to conclude that plaintiff may have been violating the Foreign Agents Registration Act, that he might be subject to deportation, or that by his contacts with and financial support from others he might be involved in improper relationships with foreign powers.

■ The documents in plaintiff's file indicate that various officials were operating on such assumptions. To be sure, to an extent conclusions in that regard are bound to be subjective, and the Court cannot, in this FOIA action, review what was actually in the minds of those who ordered plaintiff investigated or continued with that investi-

---

5. See also, *Baez v. U. S. Dept. of Justice*, 647 F.2d 1328 (D.C. Cir. 1980); *Lesar v. U. S. Dept. of Justice*, 636 F.2d 472 (D.C. Cir. 1980); *Hayden v. NSA*, 608 F.2d 1381, 1388 (D.C. Cir. 1979); *Weissman v. CIA*, 565 F.2d 692, 697 (D.C. Cir. 1977).

6. Opposition to Renewed Motion to Dismiss, p. 2.

7. For example, the Court would not be justified to require the release of information under the Freedom of Information Act which would be likely to lead to physical harm to a foreign source even if the specific data that source had provided with respect to this plaintiff could not be accurately characterized as intelligence or law enforcement information. Cf. *Lamont v. Department of Justice*, 475 F.Supp. 761, 770 (S.D.N.Y.1979); *Halperin v. Department of State*, 565 F.2d 699, 706–07 (D.C. Cir. 1977).

gation once it had begun.[8] But based upon the objective factors on the public record and those gleaned from the *in camera* inspection the Court cannot affirmatively find that the FBI and those making requests of it were acting in bad faith. See *Hayden v. National Security Agency*, 608 F.2d 1381, 1388 (D.C. Cir. 1979); *Baez v. U. S. Dept. of Justice, supra,* at pp. 1332–1333.[9] As the court said in *Irons v. Bell*, 596 F.2d 468, 474 (1st Cir. 1979),

> . . . we are hard pressed to conceive of a standard that would enable a district court to distinguish at an *in camera* proceeding between a colorably justifiable investigation that turned out to be a blind alley and an investigation that was bogus from the beginning.

Without necessarily endorsing that court's conclusion that even where there is a total lack of any likelihood of enforcement FBI records are nevertheless always regarded as compiled for law enforcement purposes,[10] this Court concludes that Exemption 1 was properly invoked in this instance,[11] and that where Exemption 7 was cited a law enforcement purpose was present.

## II

Other issues may be dealt with more summarily.

Defendant relies on Exemption 7(C) to withhold the names of FBI agents and other FBI personnel, those of officials of other federal agencies, those of third parties associated with plaintiff, and those of individuals of investigative interest to the FBI.

Plaintiff does not contest the deletion of the names of. FBI agents and other FBI employees,[12] and such deletions are therefore no longer in issue.

■ Public officials do not have as great a claim to privacy as is normally afforded to purely private citizens (although they do not altogether forego their privacy claims even with respect to matters related to official business). *Lesar v. U. S. Dept. of Justice, supra,* p. 487; see also, *Nix v. United States*, 572 F.2d 998, 1005–06 (4th Cir. 1978). Defendant claims that disclosure of the identities of such officials could subject them to unofficial inquiries that could result in harassment or discomfort. That bare claim is insufficient under the law. The individuals mentioned in the files are officials of the Department of State, the Immigration and Naturalization Service, the United States Information Agency, the Department of Justice, and the Central Intelligence Agency[13] who had some relationship to the collection of data concerning plaintiff. Beyond the assertion that their identification would subject them to unofficial inquiries they did not anticipate, defendant provides no basis for withholding disclosure. Such a claim could be upheld only on the theory that an automatic immunity exists under the FOIA regarding the identity of all federal officials. Defendant has not pointed to any precedent awarding such blanket immunity and the Court has

---

**8.** Plaintiff suggests (Supplement Memorandum, p. 7) that even if Exemption 7 applies here, "the flagrant political motivation behind the investigation at least attenuates any justification for exemption here." It is unclear on what basis the Court could hold both that the statutory exemption applies and that it does not apply.

**9.** An investigation is obviously not rendered illegitimate and improper merely because it does not ultimately result in official action of a criminal, civil, or administrative nature. Valid investigations are often conducted to determine whether official action is warranted, and the final conclusion, as often as not, may be either negative or inconclusive.

**10.** See also, *Kuehnert v. FBI*, 620 F.2d 662 (8th Cir. 1980).

**11.** The only exception to that conclusion are portions of Document 22 (pp. 4, 9, and the third paragraph of p. 11) for which Exemption 1 has not been properly invoked and which will be ordered released.

**12.** *Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir. 1977).

**13.** The Central Intelligence employees are apparently not agents.

found none.[14]    Accordingly, these names may not be withheld.[15]

▮ The names of plaintiff's associates are withheld because of the "sensitive and intimate nature" of the information or because disclosure might connect these "innocent" individuals with an FBI investigation. It is clear that these individuals do have a privacy interest which outweighs the interest asserted by plaintiff in disclosure. *Maroscia v. Levi, supra.* Similarly, the names of individuals of investigative interest to the FBI were properly withheld. *Baez v. U. S. Dept. of Justice, supra,* p. 1338.[16]

▮ Exemption 7(D) permits the withholding of the identity of confidential sources, and this exemption was asserted here in 56 instances. The sources are said by the FBI to be of two kinds: those who were interviewed in connection with the investigation of plaintiff and those who provide information on a regular basis. In every instance where a 7(D) exemption is claimed by defendant, it is asserted in conjunction with a claimed 7(C) exemption, and since the Court has upheld all but one category of 7(C) exemptions,[17] there is no need to consider the former in any detail. In any event, assurances of confidentiality were given either expressly or under circumstances where such assurances could reasonably be inferred, and the withholding is

therefore appropriate.    See, *e. g.,* Judge Weinfeld's opinion in *Lamont v. Department of Justice, supra,* 475 F.Supp. at 779 (S.D.N.Y.1979).[18]

▮ Defendant asserts Exemption 7(E) in two instances to protect investigative techniques the disclosure of which would impair the ability of the FBI to utilize similar techniques in the future.    Plaintiff asserts that the techniques involved· are wiretaps which may not be lawful, but the FBI has asserted[19] that there is no record of plaintiff's having been the subject of an electronic surveillance.    The Court's *in camera* inspection confirms that the two deletions under Exemption 7(E) do not involve wiretaps.

Defendant originally relied on Exemption 2 to withhold administrative markings (such as file numbers, handwritten notations, names and initials, routing slips, and the like).[20]    More recently, however, defendant has offered to produce such markings at the request of plaintiff.[21]    The only remaining area of dispute under the Exemption 2 rubric is that of "leads," ·*i. e.,* FBI guidelines for the handling of investigations.    Defendant asserts that such information is exempt,[22] while plaintiff claims that a judgment with respect thereto cannot be made without an *in camera* inspection to determine whether the investigative methods used were, in fact, illegal.    Since the Court

**14.** See *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 220–21, 98 S.Ct. 2311, 2316, 57 L.Ed.2d 159 (1978).

**15.** See cross references (36)(C)(ii) of the King affidavit.    This is true even if a burden of proof standard lower than that which would be applicable under Exemption 6 is applied under Exemption 7(C).    See *Dept. of Air Force v. Rose,* 425 U.S. 352, 378–79 n. 16, 96 S.Ct. at 1592, 1607, 48 L.Ed.2d 11 (1976); *Getman v. NLRB,* 450 F.2d 670, 674 (D.C. Cir. 1971).

**16.** The Court rejects plaintiff's argument that embarrassment to the investigated individual is an insufficient basis for withholding his identity.    See *Kuehnert v. FBI, supra,* 620 F.2d at 667.

**17.** Exemption 7(D) cannot resuscitate an otherwise nonexistent 7(C) claim with respect to the identity of a public official.

**18.** Numerous other courts have concurred in the *Lamont* rationale.    The Court does not accept plaintiff's argument that unless direct, eyewitness testimony of promises of confidentiality can be produced, Exemption 7(D) does not apply.

**19.** Reply to Plaintiff's Opposition, p. 8 and affidavit of James E. King.

**20.** See *Department of Air Force v. Rose, supra,* 425 U.S. at 362–70, 96 S.Ct. at 1600–03 (1972).

**21.** Memorandum in Support of Renewed Motion, p. 7.

**22.** See *Sturgeon v. U. S. Dept. of Treasury,* No. 77·1961 (D.D.C. Jan. 30, 1979).

has conducted an *in camera* inspection with respect to other matters, it has also reviewed the deletions within this category, and has concluded that they do not involve improper activity.

For the reasons stated, defendant's motion for summary judgment will be granted, except with respect to the identities of public officials and certain materials in Document No. 22.