Theodore M. LIEVERMAN,

v.

UNITED STATES DEPARTMENT OF JUSTICE.

Civ A. No. 82–2419.

United States District Court, E.D. Pennsylvania.

Sept. 27, 1984.

David Kairys, Kairys, Rudovsky & Maguigan, Philadelphia, Pa., for plaintiff.

Michael L. Martinez, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

GILES, District Judge.

In this Freedom of Information Act (FOIA), 5 U.S.C. § 552, case, Theodore M. Lieverman seeks to compel disclosure of certain documents, and portions thereof, which have been withheld by the Federal Bureau of Investigation (FBI). The parties have filed cross motions for summary judgment. Lieverman requested either the release of the withheld documents or an *in camera* inspection by this court to determine whether the documents have been properly withheld. The government asserted that the records have been properly withheld in accordance with certain FOIA exemptions. After hearing oral argument, this court decided to conduct an *in camera* inspection because some of the documents seemingly could not contain material protected by the exemptions.[1] In addition, the withheld documents were relatively few in number so that an *in camera* inspection was not overly burdensome.[2] The *in camera* inspection revealed that the documents have been properly withheld. Therefore, this court shall now grant the government's motion for summary judgment.

On June 24, 1981, Lieverman filed a request under the FOIA for all records pertaining to him in the FBI's possession. The FBI released some of the requested

---

1. For example, the FBI withheld a phone list of an organization of which Lieverman had once been a member. Given that Lieverman possessed a similar list, the government's withholding of this document seemed questionable. Review of the document during *in camera* inspection, however, has satisfied this court that it was properly withheld.

2. The FBI had a total of sixty-five pages of documents pertaining to Lieverman, forty of which were released to him in edited form. Twenty-five documents were withheld in their entirety.

documents but withheld others and portions of others, citing Exemptions (b)(1), 5 U.S.C. § 552(b)(1), (b)(2), 5 U.S.C. § 552(b)(2) and (b)(7), 5 U.S.C. § 552(b)(7). The records withheld pursuant to Exemption (b)(1) were considered classified, in whole or in part, under Executive Order 12,065, the applicable Executive Order then in effect.

Lieverman appealed the FBI's decision. On appeal, additional documents were released to him. With the exception of the release of these additional records, the initial administrative decision was upheld.

Lieverman subsequently filed this civil action seeking judicial review of the administrative decisions. The parties stipulated to the government's filing a *Vaughn* index in which the FBI would give specific reasons explaining why certain records were withheld from Lieverman.[3] Two special agents prepared affidavits in which they explained and justified each withholding. These affidavits and sanitized copies of the records in dispute were submitted as the *Vaughn* index. Special Agent Gary Haegele prepared his affidavit after he independently reviewed the records withheld pursuant to Exemption (b)(1). This exemption protects from disclosure all records which are:

> (A) specifically authorized under criteria established by an Executive order to be kept secret in the interests of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order.

He conducted his review pursuant to the criteria of Executive Order 12,356, 47 Fed. Reg. 14874 (1982), which went into effect on August 1, 1982.[4] He concluded that the withheld records contained information regarding intelligence activities, sources and methods entitling these documents to classification under § 1.3(a)(4) of Executive Order 12,356. Under § 1.3(c) of Executive Order 12,356 "[u]nauthorized disclosure of ... the identity of a confidential foreign source, or intelligence sources or methods is presumed to cause damage to the national security." Consequently, he classified the relevant material as "confidential" in accordance with § 1.1(a)(3). In his affidavit, Special Agent Michael Beyer explained the steps taken by the FBI in responding to Lieverman's request, the files that were searched, the reasons for a file on Lieverman and the rationale for withholding certain records pursuant to Exemptions (b)(2), (b)(7)(C) and (b)(7)(D).

Exemption (b)(2), 5 U.S.C. § 552(b)(2), exempts from disclosure matters that are "related solely to the internal personnel rules and practices of an agency." This exemption applies to "routine matters" of "merely internal significance" in which the public lacks any substantial or legitimate interest. *Dept. of the Air Force v. Rose*, 425 U.S. 352, 369–70, 96 S.Ct. 1592, 1603, 48 L.Ed.2d 11 (1976). The FBI withheld "source symbol numbers" which it uses to refer to agents or informants in FBI records under this exemption.

Exemption (b)(7)(C) and (D), 5 U.S.C. § (b)(7)(C) and (D) exempts from disclosure:

> [I]nvestigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... (C) constitute an unwarranted invasion of personal privacy,

3. *See Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

4. Executive Order 12,065 was repealed and replaced by Executive Order 12,356 while this action was pending. The new Executive Order dispensed with a section advising the government to balance the need to protect classifiable information against the public interest in disclosure of the information. Although Executive Order 12,065 was in effect when plaintiff made his document requests, the government properly applied Executive Order 12,356 when classifying certain documents. *See Afshar v. Dept. of State,* 702 F.2d 1125, 1135–37 (D.C.Cir.1983). Executive Order 12,356 includes all of the substantive classification criteria of Executive Order 12,065. Therefore, documents that were classifiable under Executive Order 12,065 are now classifiable under Executive Order 12,356. *See id.* at 1137–38 n.18. *See also LaRouche v. Kelley,* 522 F.Supp. 425, 432 (S.D.N.Y.1981), *quoting Lesar v. United States Dept. of Justice,* 636 F.2d 472, 480 (D.C.Cir.1980).

(D) disclose the identity of a confidential source and, in the case of a record compiled ... by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source...

The FBI invoked Exemption (b)(7)(C) to protect the identities of FBI personnel, third parties mentioned in FBI records, third parties who provided information to the FBI during the course of their employment and state and local law enforcement officers. Exemption (b)(7)(D) was invoked to protect source symbol numbers and file numbers, the names of individuals who were confidential sources, the identities of commercial institutions providing information and information from a state or local law enforcement agency.

Lieverman has made numerous objections to the invocation of these exemptions which can be summarized as follows:

*Exemption (b)(1):*

1. The government failed to show how one of the withheld documents relates to national security information (citing § 1.6(a) of Executive Order 12,356) and it failed to explain why a particular person or organization was under investigation.

2. Certain documents were not classified until three months after this action was filed and more than ten years after the documents were actually produced.

*Exemption (b)(7)(C):*

3. The government failed to show that the withheld documents were compiled for law enforcement purposes.

*Exemption (b)(7)(D):*

4. The government offered no facts to support the claims of assurances of express or implied confidentiality in exchange for the withheld information.

5. The government failed to show that the investigation of Lieverman was conducted for legitimate national security purposes rather than for harrassment purposes.

6. The government was overzealous in classifying documents because its standard was whether the information contained therein could be pieced together with other information to identify sources.

7. With regard to information provided by a financial institution, there was no showing that the investigation was proper, there was no showing that the information was provided under an assurance of confidentiality and there is no recognized exemption for information provided by financial institutions. In addition, a financial institution breaches a fiduciary duty when it releases confidential information to the government about its patrons.

8. With respect to documents in which long paragraphs were deleted, Lieverman doubts that only the names of persons mentioned in FBI files are in these files.

Lieverman has not objected to the documents withheld pursuant to Exemption (b)(2).

■ Contrary to Lieverman's assertions, failure to show a legitimate national security reason for conducting an investigation into an individual's activities does not invalidate the government's invocation of Exemption (b)(1). The focus in Exemption (b)(1) cases is the withheld information itself, not the reason for the underlying investigation. *See Lesar v. United States Dept. of Justice*, 636 F.2d 472, 483 (D.C. Cir.1980) (FBI surveillance beyond the bounds of initial lawful security aim does not preclude exemption of documents so procured if they may contain information which could compromise legitimate security needs); *LaRouche v. Kelley*, 522 F.Supp. 425, 435 (S.D.N.Y.1981) (rejecting plaintiff's argument that government had burden of showing its investigation had "a tangible connection to 'national defense or foreign policy.' ").

■ Lieverman's objections on grounds that certain documents were not classified until after this action was filed also prove to be without legal merit. In *Lesar, supra*, 636 F.2d at, 483–84, the government had failed to comply with the relevant Executive Order which required that each docu-

88

ment be marked at the time of origination with its assigned security classifications. The belated classification of the documents did not preclude invocation of Exemption (b)(1). Rather, the court determined that "[t]o release these materials because of a mere mishap in the *time* of classification, when the documents are sworn to contain sensitive information, would only be perverse." *Lesar,* 636 F.2d at 484. Moreover, here an *in camera* inspection has revealed that the delay in classification was undoubtedly due to oversight and not to an attempt to prevent unprotected materials from being disclosed.

 Lieverman's contention that the government must show that the withheld documents were compiled for law enforcement purposes as a prerequisite to invoking Exemption (b)(7) appears to be correct. *See FBI v. Abramson,* 456 U.S. 615, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982) (indicating that a two part inquiry is necessary to determine whether Exemption (b)(7) has been properly invoked—(1) whether the document was compiled for law enforcement purposes and (2) whether one of the six harms listed in Exemption (b)(7) has been demonstrated); *Demetracopoulos v. FBI,* 510 F.Supp. 529, 531 (D.D.C.1981), *Malizia v. United States Dept. of Justice,* 519 F.Supp. 338, 347–48 (S.D.N.Y.1981). Invocation of the exemption will be sustained here. The *in camera* inspection has revealed that the documents were compiled for a legitimate law enforcement purpose. *See Lamont v. Dept. of Justice,* 475 F.Supp. 761, 773 (S.D.N.Y.1979) (appropriate test is whether agency gathered information with good faith belief that subject may violate or has violated federal law). Moreover, the government has demonstrated that releasing the withheld documents would result in one of two harms—either the unwarranted invasion of personal privacy or the disclosure of confidential sources.

The government invoked Exemption (b)(7)(C) to protect the identities of FBI personnel, third parties mentioned in FBI records, third parties who provided information to the FBI during the course of

their employment and of any state or local law enforcement officers. In *Lesar, supra,* the court held that while there is no "blanket exemption for the names of all FBI personnel in all documents," they do have a privacy interest which can be protected by the invocation of Exemption (b)(7)(C) after the court has balanced this privacy interest against the public interest in disclosure of their names. 636 F.2d at 487. The government's representations that disclosure of FBI personnel involved in the Lieverman investigation could hamper the integrity of future FBI investigations outweigh any interest Lieverman may have in obtaining this information. *See Malizia,* 519 F.Supp. at 348–49 (although the privacy of FBI agents is minimal, the public interest in identifying them is even less). Application of this balancing results in a finding that Exemption (b)(7)(C) has been properly invoked with respect to various third parties and law enforcement officers as well. *See Lesar,* 636 F.2d at 488, *quoting Lesar v. United States Dept. of Justice,* 455 F.Supp. 921, 925 (D.D.C.1978) ("Those cooperating with law enforcement should not now pay the price of full disclosure of personal detail."); *Keuhnert v. FBI,* 620 F.2d 662, 667 (8th Cir.1980) (FBI properly withheld the names of third parties asserted to be of "investigative interest" to the FBI under Exemption (b)(7)(C); *LaRouche,* 522 F.Supp. at 438 (footnote omitted) ("It repeatedly has been held that the balance in a case such as this one should be struck in favor of protection of individual privacy interests.").

 Lieverman has made several objections to the invocation of Exemption (b)(7)(D). He contends that the government has offered no facts supporting its claims of express or implied confidentiality. Special Agent Beyer did aver in his affidavit that confidentiality was either express or implied. In addition, the showing demanded by Lieverman is not required since "[s]uch a promise of confidentiality is presumed in the context of a law enforcement investigation, especially one conducted by the FBI." *LaRouche,* 522 F.Supp. at 439 (footnote omitted). *See Malizia,* 519

F.Supp. at 350; *Lamont,* 475 F.Supp. at 779.

Lieverman also contends that there is no recognized exemption for financial institutions as confidential sources. This contention is simply incorrect. It has been determined that [c]onfidential sources are not only paid informants. Any provider of information is considered a source, whether that provider is a natural person, a corporate entity, or another governmental body." *LaRouche,* 522 F.Supp. at 439 (footnote omitted). *See also Lesar,* 636 F.2d at 490–91 (interpreting legislative history to extend protection to whatever source of information the law enforcement agency employs during the investigation).

In conclusion, after reviewing the *Vaughn* index and the withheld documents, with each of Lieverman's objections in mind, this court is satisfied "that all of the statutory exemptions utilized by the Government to withhold or excise material ... were properly claimed." *Docal v. Bennsinger,* 543 F.Supp. 38, 49 (M.D.Pa. 1981). The *Vaughn* index is as detailed as it can be without actually divulging the protected information. The *in camera* inspection revealed that the exemptions were claimed in good faith and that they were not used to disguise illegal activity by the FBI. Consequently, the government will not be ordered to release these documents to Lieverman.