NATIONAL CATHOLIC REPORTER PUBLISHING COMPANY et al., Plaintiffs,

v.

FEDERAL BUREAU OF INVESTIGATION et al., Defendants.

Civ. A. No. 80–0585.

United States District Court, D. C. District of Columbia.

May 20, 1981.

Joshua J. Kaufman, Washington, D. C., for plaintiffs.

John C. Martin, Asst. U. S. Atty., Washington, D. C., for defendants.

## ORDER

JOYCE HENS GREEN, District Judge.

There are two motions pending before the Court, the defendants' motion to dismiss or, in the alternative, for summary judgment, and the defendants' motion to strike from the record certain allegations made by the plaintiffs to the effect that the defendants have acted in bad faith.

Plaintiffs brought this action under the Freedom of Information Act, 5 U.S.C. § 552 (1976) (hereinafter "FOIA") against the Federal Bureau of Investigation (hereinafter "FBI") and other defendants. On November 8, 1977, plaintiffs filed a FOIA request with the defendants seeking all FBI records which pertained to "any contact between the FBI and anyone who ... was recognized ... as a liaison between the FBI and the state known as the Vatican or Vatican City," and "any contacts between the FBI and anyone who ... was recognized ... as a liaison between the FBI and the United States Catholic Conference or the National Catholic Welfare Conference" over the last twenty years. The defendants furnished the plaintiffs with 669 pages of material and advised them that 7 pages were being withheld under exemption (b)(1) for classified information. Plaintiffs' ap-

peal of the withholding was denied and this action ensued.

■ In the course of this litigation, the plaintiff alleged that the affidavits of Special Agents Smith and Kellen were unreliable because the agents made false statements concerning the classification of the seven pages at issue in this suit. The Court granted the defendants' request to file out of time a motion to strike these allegations, and has withheld its ruling on that motion until completion of an *in camera* review of the documents. Based on that examination, the affidavits of the agents in connection with the motion to strike, and the record as a whole, there is absolutely no record of bad faith on the part of the two special agents whose affidavits are filed in support of the defendants' motion to dismiss or for summary judgment, nor anyone else involved in the search, retrieval, and dissemination process. Apparently, the plaintiffs thought the documents at issue were classified after the affidavits from agents Smith and Kellen were filed, but the procedures of Executive Order (hereinafter "E.O.") 12,065 mandate that the materials under classification at the time the affidavits were filed be referred to the Department of Justice Review Committee for a determination whether they warranted continued classification. What the plaintiffs took to be a *post facto* classification was instead work by two Special Agents in compliance with the President's directive to ensure that classified documents were reviewed periodically to determine whether their secret status needed to be maintained. Rather than demonstrate "bad faith," the agents' affidavits indicate "a suitably informed basis on which a District Court could rationally determine that the withheld portions of the requested documents are within the claimed statutory exemptions." *Church of Scientology of California v. Turner*, No. 80–1172 (D.C.Cir., decided Dec. 18, 1980), slip op. at 6.[1]

■ Because the exemption claimed by the defendants is that embodied in 5 U.S.C. § 552(b)(1), for material properly classified for reasons of national defense or foreign policy, a two step inquiry surfaces, a determination of "which Executive Order properly governed the agency's ultimate classifications of the documents in dispute," and an analysis whether "those documents were in fact properly classified according to both the procedural and substantive criteria contained in that Executive Order." *Carlisle Tire and Rubber Co. v. United States Customs Service*, No. 80–1149 (D.C.Cir. decided Dec. 17, 1980), slip op. at 10.

At the time of the administrative action on the plaintiffs' request, E. O. 11,652 was in effect and it was under that order that the documents were deemed to be classified properly in the denial of plaintiff's appeal. When defendants filed their original dispositive motions in this action, classification policy was governed by E. O. 12,065. That latter order contains a provision "for classification at times later than that of the origin of the document, [thus] proper subsequent classification under Executive Order No. 12,065 suffices to cure any procedural and substantive defects in classification which may have existed under Executive Order No. 11,652." *Carlisle Tire, supra*, at 10–11.

The determination whether the materials are properly classified requires analysis of the affidavits submitted by Special Agents Smith and Kellen.

In making its assessment, the district court is to afford 'substantial weight' to the agency's affidavits. We have interpreted this requirement to mean that if the affidavits contain information of reasonable detail, sufficient to place the doc-

---

1. Plaintiffs also complained that the defendants had not met the requirements of Local Rule 1–9(h) in their submission of a statement of material facts not in dispute. *See Gardels v. Central Intelligence Agency*, 637 F.2d 770 (D.C. Cir., 1980). At the time the defendants' motion was submitted originally, their statement pursuant to Rule 1–9(h) merely incorporated the affidavits of Special Agents Kellen and Smith. In *Gardels*, the Court of Appeals for this Circuit ruled that such a statement was insufficient to satisfy the mandate of the Rule. After plaintiffs objected to defendants' statement, defendants refiled their statement of material facts not in dispute in order to satisfy the *Gardels* holding.

uments within the exemption category, and if the information is not challenged by contrary evidence in the record or evidence of agency bad faith, then summary judgment for the Government is appropriate without an *in camera* review of the documents.

*Lesar v. United States Department of Justice,* 636 F.2d 472, 481 (D.C.Cir., 1980). Nonetheless, an *in camera* inspection was made because subsequent to the *Lesar* decision, the Court of Appeals for this Circuit decided *Allen v. Central Intelligence Agency,* 636 F.2d 1287 (D.C.Cir.1980), in which it set out the criteria, particularly relevant here, governing the need for *in camera* review. As then Chief Judge Wright noted in *Allen,*

> [W]hen the requested documents are few in number and of short length, [a] reluctance [to review *in camera*] frequently exacts a cost from the parties and the courts in time and money. An examination of the documents themselves in those instances will typically involve far less time than would be expended in presentation and evaluation of further evidence.

*Allen, supra,* at 1298. While recognizing an absence of bad faith on the part of the agency, *Allen's in camera* reflections are precisely tailored to the small number of documents here contained in a mere seven papers.

Special Agent Kellen, in his affidavit, cogently details the categories governing classification under E.O. 12,065, and indicates how they relate to the documents in issue. The *in camera* review affirms that the statements in the affidavit are in accord with the content of the documents and their classification status.

Document No. 1 is a letter dated December 12, 1955 consisting of three pages, withheld on the basis of E.O. 12,065, § 1–301(d),[2] § 1–302,[3] because the entire document contains foreign relations information, revelation of which "could reasonably be expected to cause identifiable damage to the national security ...." Kellen Aff. ¶ 4(C). It is apparent that the document cannot be segregated in any manner that would permit partial release without risking danger to the national security, and that further description than that given in the Kellen Affidavit would reveal the content of the document itself. See *Church of Scientology, supra,* at 6.

Document No. 2, a letter dated December 20, 1955 consists of two pages, withheld on the basis of E.O. 12,065 §§ 1–301(b) and (d), 1–302, and 1–303.[4] Not only does the document contain foreign relations information, but also reveals sources in foreign governments who have given confidential information to this country, disclosure of which would cause identifiable damage to the national security. E.O. 12,065 § 1–303.

Document No. 3, a letter dated January 16, 1956 consisting of two pages, was classified pursuant to E.O. 12,065 §§ 1–301(b) and (d), 1–302, and 1–303. The information contained therein could not be subjected to further segregation, and disclosure of its contents would reveal sources in foreign governments who offered information under a pledge of confidentiality as well as revealing the "specific target and extent of the cooperative endeavor ... [involving] a "specific foreign relations matter." Kellen Aff., description of Document No. 3.

■ Of course, that "certain information has been received from a foreign government 'in confidence' does not, by itself,

---

**2.** Section 1–301 declares:
  Information may not be considered for classification unless it concerns: (a) military plans, weapons or operations; (b) foreign government information; (c) intelligence activities, sources or methods; (d) foreign relations or foreign activities of the United States ....

**3.** Section 1–302 requires that to be classified, a document not only fall into a category of § 1–301, but also that "an original classification

authority ... determines that its unauthorized disclosure reasonably could be expected to cause at least identifiable damage to the national security."

**4.** Section 1–303 adds the judgment that "[u]nauthorized disclosure of foreign government information or the identity of a confidential foreign source is presumed to cause at least identifiable damage to the national security."

compel automatic classification of the document." *Carlisle Tire, supra,* at 15. Not only do all three documents contain information received in confidence, but the release of the materials would cause identifiable damage to the national security and foreign policy of the United States. Indeed, documents (2) and (3) are subject to the presumption contained in E.O. 12,065 that "[u]nauthorized disclosure of foreign government information . . . [w]ill cause at least identifiable damage to the national security." The affidavits and an *in camera* review of the materials in those two documents indicate that there is "prima facie" foreign government information worthy of protection from release. *See Carlisle Tire, supra,* at 14. Document No. (1) likewise should be protected from disclosure because its release could harm the national security.

The only remaining question is whether the documents were classified according to the procedures outlined in the Executive Orders. Special Agent Kellen examined all three documents and itemized and indexed the portions thereof to the appropriate categories under E.O. 12,065. Special Agent Kellen determined that each portion, on a paragraph by paragraph basis, and that each document, examined in its entirety, meets the criteria of the Executive Order. Moreover, each document bears the identity of the classifying authority, the office of origin, the date of declassification or review, and is stamped "Secret." It appears without doubt that proper procedures were followed in the agency's determination that these documents warranted continued classification under E.O. 12,065.

These affidavits provide "the kind of detailed, scrupulous description" that enables a judge, in connection with an *in camera* review, to perform a "searching de novo review." *Church of Scientology, supra,* at 6. Accordingly, no material factual issues remain for resolution. The documents withheld from the plaintiffs are properly classified under the appropriate Executive Orders, it is this 19th day of May, 1981.

ORDERED that defendants' motion for summary judgment be and it hereby is granted, and it is

FURTHER ORDERED that the defendants' motion to strike be and hereby is granted, and that the following portions of the record be struck:

Plaintiffs' "Points and Authorities," all of paragraphs 6, 7, 8, 9, the second sentence of paragraph 10, and the conclusion paragraph in its entirety; Plaintiffs' "Statement of Genuine Issues," all of paragraphs 3, 5, 20, 21, 22, and 23(a), (b), (c) and (g).