**Lyndon H. LAROUCHE, Jr., et al., Plaintiffs,**

v.

**Clarence KELLEY, et al., Defendants.**

**No. 75 Civ. 6010.**

United States District Court, S. D. New York.

Sept. 1, 1981.

---

David S. Heller, New York City, for plaintiffs.

Robert B. Fiske, Jr., U. S. Atty., New York City, for defendants; Carl T. Solberg, Asst. U. S. Atty., New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

The present—and third—pre-trial, written opinion in this protracted litigation is occasioned by the parties' cross-motions for partial summary judgment and by plaintiffs' motion in the alternative for *in camera* inspection of documents. The issue presented for resolution by the Court involves plaintiffs' alleged right under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to disclosure of information withheld by the Federal Bureau of Investigation ("FBI") contained in documents and reports already released to them in part. At the request of plaintiffs,[1] the Court has undertaken an independent, *in camera* ex-

---

1. *See* Plaintiffs' Motion for In Camera Inspection and/or Partial Summary Judgment, filed

August 7, 1979. The Notice of Motion identified 14 FBI documents for which plaintiffs re-

amination of the fourteen representative documents selected by plaintiffs[2] to ascertain the validity of the claimed exemptions from disclosure under the FOIA. On the basis of that considered review, the Court finds that the withholding of the particular items of information is authorized by the substantive criteria governing the exemptions asserted by the FBI. It further finds that the FBI observed the formal procedures mandated by the FOIA and the agency's own regulations in classifying and withholding the information.[3]

### HISTORY OF PROCEEDINGS

This action was commenced on December 5, 1975. Plaintiffs alleged three causes of action: (1) disruptive and unconstitutional surveillance of plaintiffs, who include (a) Lyndon H. LaRouche, Chairman of the United States Labor Party ("USLP") and the National Caucus of Labor Committees ("NCLC"), (b) the USLP, an unincorporated political committee, (c) the NCLC, an unincorporated political association, and (d) 13 individual members and/or officers of the two political groups; (2) illegal refusal by defendants under the FOIA to furnish plaintiffs with the excised portions of the approximately 6000 pages of documents released by the FBI to the plaintiffs;[4] and (3) intent by the FBI to release to the public at large a number of documents relating to plaintiffs and allegedly containing

---

**2.** The Court is given authority to conduct an *in camera* inspection by 5 U.S.C. § 552(a)(4)(B). In the circumstances of this particular case, the Court deemed it advisable to conduct the requested examination. *Accord, Irons v. Bell*, 596 F.2d 468, 471 n.6 (1st Cir. 1979) ("When the legal issue of the applicability of an exemption depends upon the factual nature of the contents of a document, we think it appropriate to obtain fairly complete information about the factual question before deciding the legal issue."). *See also Ferri v. Bell*, 645 F.2d 1213, 1217 (3d Cir. 1981); *Allen v. CIA*, 636 F.2d 1287, 1294, 1298–99 (D.C.Cir.1980); *McCorstin v. United States Dep't of Labor*, 630 F.2d 242, 243 n.4 (5th Cir. 1980); *National Catholic Reporter Publishing Co. v. FBI*, 514 F.Supp. 1149 (D.D.C.1981); *Demetracopoulos v. FBI*, 510 F.Supp. 529, 530 (D.D.C.1981). In the Court's opinion, *Lead Indus. Ass'n v. OSHA*, 610 F.2d 70 (2d Cir. 1979), in which the district court's order for *in camera* inspection was disapproved, is not controlling due to the difference in exemptions claimed, the extent of deletions and documents in question, and the posture of the litigants. Similarly, while the Court is respectful of Judge Weinfeld's scholarly opinion in *Malizia v. United States Dep't of Justice*, 519 F.Supp. 338 (S.D.N.Y. 1981), wherein *in camera* inspection is not automatically "required when the Government's affidavits and actions make a plausible case for exemption," at 342, in the present action the Government has indicated its willingness to have the Court undertake the examination.

Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Partial In Camera Inspection or Partial Summary Judgment, and in Support of Defendants' Cross-motion for Partial Summary Judgment, filed September 17, 1979, at 2. [hereinafter cited as "Defendants' Memorandum of Law"] *See also id.* at 5.

quested an *in camera* inspection. In their response to that motion, defendants stated:

Defendants oppose this motion on the ground that their previous submissions have set forth sufficient justification under the law for withholding portions of the subject documents. However, defendants consent to *in camera* inspection of the 14 documents by the Court. Defendants do not, of course, consent to plaintiffs' alternative remedy of partial summary judgment, but contend that on the contrary, *in camera* review of the documents will show that defendants are entitled to partial summary [sic] in withholding portions of the 14 documents.

**3.** A few exceptions to the substantive and procedural holdings are identified, *infra*, notes 34, 49 and 53.

**4.** Defendants refer to the existence of 13,000 documents "of which more than 6000 have been released . . ." Defendants' Memorandum of Law at 1–2, 4. Plaintiffs refute those numbers, suggesting instead that "there are something like 2000 documents at issue . . . ." Plaintiffs' Supplemental Memorandum of Law in Support of Motion for Partial Summary Judgment, filed December 3, 1979, at 1 n.1. [hereinafter cited as "Plaintiffs' Supplemental Memorandum of Law"] *See also* Plaintiffs' Memorandum of Law in Support of Motion for In Camera Inspection and/or Partial Summary Judgment, filed August 7, 1979, at 1. [hereinafter cited as "Plaintiffs' Memorandum of Law"] On the basis of all of the pleadings, it appears to this Court that the Government intended to speak of 13,000 *pages*, 6000 of which have been released. *See, e. g.*, Defendants' Supplemental Memorandum of Law, filed December 20, 1979, at 1.

harmful, slanderous, and fabricated information, in violation of the Privacy Act, 5 U.S.C. § 552a(b)(2).

The subject of the FOIA-related cause of action, and the present cross-motions for partial summary judgment, is the information compiled by the FBI during its investigation of the NCLC, its members, and their various activities.[5] A first demand upon the FBI was made under the FOIA for files pertaining to the NCLC investigation and the present plaintiffs on October 29, 1975.[6] Pursuant to that request a first group of documents was released in April 1977, consisting of approximately 5300 pages of material.[7] An additional request was made on July 3, 1977.[8] By March 1978, approximately 7400 pages of documents from the NCLC files had been turned over to plaintiffs.[9] However, the FBI deleted certain information from many of the documents it released, claiming various exemptions to disclosure under the FOIA.[10]

Because the requested documents were not released in full, plaintiffs demanded a detailed index and itemization of the documents involved, the exemptions claimed by the FBI for the deleted material, and the classification procedure/standards observed. In response, defendants submitted several Vaughn affidavits.[11] *See* Affidavit of David G. Binney, Special Agent of the FBI, dated March 29, 1978; Second Affidavit of David G. Binney, dated August 25, 1978; Affidavit of Robert D. Shea, Special Agent of the FBI Assigned to Document Classification and Review Section, dated August 28, 1978; Second Affidavit of Robert D. Shea, dated November 6, 1978; Third Affidavit of David G. Binney, dated November 6, 1978; Fourth Affidavit of David G. Binney, dated September 20, 1979; and Affidavit of Peter W. Kellen, Special Agent of the FBI, dated June 17, 1980. On the basis of those affidavits, defendants have contested plaintiffs' motion for partial summary judgment and have cross-moved for partial summary judgment.

Approximately one year after this lawsuit was initiated, Judge Owen, then presiding Judge, issued an opinion addressing a number of plaintiffs' substantive claims and defendants' affirmative defenses. *See LaRouche v. Kelley*, No. 75–6010, Memorandum and Order (S.D.N.Y. February 15, 1977). Judge Owen granted defendants' motion to dismiss defendant FBI on the ground that Congress had not provided authority to sue that agency. Memorandum and Order at 4. He denied plaintiffs' re-

---

**5.** The investigation allegedly commenced some time in 1969 and "was officially terminated in September, 1977." Plaintiffs' Statement Pursuant to Local Rule 9(g), filed May 6, 1980, ¶ 5. Plaintiffs' tort and civil rights claims allege that the surveillance was designed to undermine and disrupt the organization because of its political beliefs and activities, in violation of plaintiffs' First, Fourth, Fifth, Sixth and Eighth Amendment rights under the United States Constitution. The present motion does not encompass all reports or documents in the files maintained in connection with that surveillance, many of which have been classified and not released, but instead seeks a determination as to the legality of the withholding by defendants of portions of the 14 isolated documents. *See* Motion for In Camera Inspection and/or Partial Summary Judgment, filed August 7, 1979, at 2–3.

**6.** *See* Plaintiffs' Memorandum of Law at 2.

**7.** *Id. See* note 4, *supra.*

**8.** Affidavit of David G. Binney, dated March 29, 1978, ¶ 14.

**9.** *Id.,* ¶ 11. *See also* Plaintiffs' Memorandum of Law at 2.

**10.** The specific exemptions claimed for the 14 documents, that are the subject of the instant motions and that were submitted for *in camera* inspection, are set forth in detail in Appendix A.

**11.** *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). In *Vaughn* the Court reversed an award of summary judgment against a FOIA plaintiff and remanded, ordering the Government to "undertake to justify in much less conclusory terms its assertion of exemption and to index the information in a manner consistent" with the standards of specificity, separation and indexing established by the Court. *Id.* at 828. The required indexing "would subdivide the document under consideration into manageable parts cross-referenced to the relevant portion of the Government's justification [for the alleged exemptions.]" *Id.* at 827.

quest for expedited treatment of their FOIA claims as moot and speculative. *Id.* at 8. He denied plaintiffs' motion for preliminary injunction on the basis of the defendants' consent " 'not to interfere with petitions and with normal electoral processes,' at the time or in the future . . . ." (citation omitted) *Id.* at 10. Plaintiffs' request for injunctive or declaratory relief for alleged violation of their constitutional rights was denied because the claims did not present a justiciable controversy. Judge Owen found no objective "chill" of First Amendment rights, or threatened, future objective harm.[12] *Id.* at 11–12.

On February 28, 1979 the parties entered into a stipulation providing:

> 1. Defendants and the Federal Bureau of Investigation ('the FBI') are enjoined from releasing to requesters under the Freedom of Information Act or the Privacy Act, and from making available to the public generally, other than plaintiffs herein, any of the documents in their possession . . . production of which has been requested by plaintiffs herein pursuant to the Freedom of Information Act
>
> . . . .

That stipulation was the outgrowth of an Order to Show Cause proceeding instituted by plaintiffs to enjoin the FBI from making available to the general public records from the FBI files relating to the NCLC or USLP, which files were allegedly slanderous or otherwise harmful.

Finally, in February of this year, the Court issued a second decision addressing various motions then pending. In that opinion, the Court dismissed defendants Levi and Kelley in their individual capacities for lack of personal jurisdiction.[13] It denied defendants' motion to dismiss the First Amendment claims, holding that those claims were not moot.[14] Finally, the Court

---

**12.** Plaintiffs were given leave to file an amended complaint to cure defects in pleading objective "chill". An amended complaint has been filed. The Court agrees with defendants, however, that the amended pleading does not cure the defects found by Judge Owen with respect to the claim for declaratory and injunctive relief. The Amended Complaint filed with the Notice of Motion to Amend on April 20, 1977 alleges in addition to the claims included in the original pleading that: (1) plaintiffs have been unable to disseminate their political beliefs; (2) their reputations have been impugned; (3) their lives have been disrupted, placing them in fear of further disruptions. Examination of the Amended Complaint reveals that, as before, the claims asserted are based on past alleged misconduct of the FBI, resulting in present injury. However, the Amended Complaint fails to suggest to this Court any basis for overturning the decision of Judge Owen, which is the law of this case. Plaintiffs also rely on the argument that, since the affidavit of Peter W. Kellen, Special Agent of the FBI, speaks of the need to keep secret certain information in order to prevent disclosure of the methods of intelligence, the identity of the source, or of classified information, there must be an ongoing intelligence operation. A close reading of the Kellen affidavit belies that interpretation. Although the Court denied defendants' motion to dismiss in February of this year, rejecting the defense of mootness (*see* note 14, *infra*), the Court at this time grants defendants' motion to dismiss the Amended Complaint requesting declaratory and injunctive relief for failure to state a cause

of action. The cause of action under the FOIA is not affected by this ruling.

**13.** These defendants already had been dismissed in their official capacities by Judge Owen. The action was transferred from Judge Owen to me pursuant to the Rules for the Division of Business Among District Judges of the Southern District of New York Pursuant to Title 28, U.S.C. § 137 (assignments to new judges).

**14.** The ruling in note 12, *supra*, that plaintiffs' Amended Complaint does not palliate the defects found by Judge Owen in the original pleading, is consistent with this Court's ruling today on the issue of mootness. The Court stated previously that, under the standards set forth in *United States v. W. T. Grant Co.*, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1952), *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968), and *DeFunis v. Odegaard*, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974), "defendants have failed to carry their heavy burden of demonstrating the remoteness of probability that the wrongs claimed herein will be repeated" (footnote omitted) so as to render the injunctive claims moot. Judge Owen, citing *Laird v. Tatum*, 408 U.S. 1, 11, 13–14, 92 S.Ct. 2318, 2324, 2325–2326, 33 L.Ed.2d 154 (1972) found that the evidence of specific, present, objective harm or threat of specific, future harm was not sufficiently alleged to support injunctive relief at that time.

denied the cross-motions for summary judgment, agreeing to conduct the *in camera* inspection that is the subject of the present decision.

## DISCUSSION

### I.

### INTRODUCTION

In the course of its review of the fourteen documents, the withheld information, and the asserted exemptions permitting non-disclosure of that information, the Court has been mindful of several well-established precepts. First, the general philosophy of the FOIA is full agency disclosure. *GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.*, 445 U.S. 375, 385, 100 S.Ct. 1194, 1200, 63 L.Ed.2d 467 (1980).

> Without question, the Act is broadly conceived. It seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands.

*Environmental Protection Agency v. Mink*, 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). *See also GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.*, 445 U.S. at 385–86, 100 S.Ct. at 1200–1201; *Department of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d

11 (1976); *Fund for Constitutional Government v. National Archives and Records Service*, 656 F.2d 856, at 862 (D.C.Cir. 1981).

▇ Second, within the FOIA, nine exemptions are expressly created permitting the Executive to withhold information from the public. However, these exemptions are limited and must be narrowly construed.[15] The burden is on the Government to sustain the claimed exemption.[16] Finally, the FOIA requires that the Court determine disputes arising out of an agency withholding of information *de novo*.[17] 5 U.S.C. § 552(a)(4). In the particular case at hand, unlike others,[18] the Court has had the benefit of reviewing the documents and deletions for itself. Therefore, although the Court will make reference to the *Vaughn* affidavits in its opinion, it has not relied on those affidavits alone in determining whether any of the nine exemptions aptly are invoked in this case.[19]

### II.

### DISPUTED DOCUMENTS

A. Substantive Criteria

The discussion of the Government's substantive FOIA claim [20] that the disputed materials were properly classified and withheld under the statutory exemptions is divided into three parts. The first discusses

---

The amended pleading does not significantly alter plaintiffs' claims in that respect, and the evidentiary foundation has not changed over the past four years.

15. See *Kuehnert v. FBI*, 620 F.2d 662, 665 (8th Cir. 1980); *Church of Scientology of Cal. v. United States Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1979); *Hayden v. National Security Agency*, 608 F.2d 1381, 1386 (D.C.Cir.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980); *Katz v. United States Dep't of Justice*, 498 F.Supp. 177, 179 (S.D.N.Y.1979). *Cf. Irons v. Bell*, 596 F.2d 468, 476 (1st Cir. 1979) (dicta).

16. 5 U.S.C. § 552(a)(4)(B). *See, e. g., Military Audit Project v. Casey*, 656 F.2d 724, at 738 (D.C.Cir. 1981); *Lesar v. United States Dep't of Justice*, 636 F.2d 472, 481 (D.C.Cir.1980); *Kuehnert v. FBI*, 620 F.2d at 665 ("the Government bears the burden of proving that material withheld from disclosure falls under one or

more of the Act's exemptions."); *Hayden v. National Security Agency*, 608 F.2d at 1386.

17. *See* cases cited in note 16, *supra. See also Ferri v. Bell*, 645 F.2d 1213, 1217 (3d Cir. 1981).

18. *E. g., Lesar v. United States Dep't of Justice*, 636 F.2d 472 (D.C.Cir.1980); *Keeney v. FBI*, 630 F.2d 114 (2d Cir. 1980); *Kuehnert v. FBI*, 620 F.2d 662 (8th Cir. 1980); *Malizia v. United States Dep't of Justice*, 519 F.Supp. 338 (S.D. N.Y. 1981).

19. *See McCorstin v. United States Dep't of Labor*, 630 F.2d 242, 244 n.7 (5th Cir. 1980); *Demetracopoulos v. FBI*, 510 F.Supp. 529, 530 (D.D.C.1981).

20. The issue of the Government's compliance with procedural requirements of the FOIA is discussed, *infra*, part IIB.

FOIA Exemption 1, 5 U.S.C. § 552(b)(1), as it has been asserted by the Government for each document. The second analyzes the exemptions claimed under FOIA Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), for each document. The third section discusses FOIA Exemption 7(D) as it has been invoked by the Government for each of the 14 documents.

1. *Exemption 1*.

The FOIA provides, in part:

(b) This section does not apply to matters that are—

(1)(A) specifically authorized . . . by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

. . . .

5 U.S.C. § 552(b)(1). The present language was enacted in the 1974 Amendments to the FOIA. While specifically providing for *de novo* determination of contested records by the federal courts, including *in camera* examination, Congress expressly recognized at the time

> that the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects might occur as a result of public disclosure of a particular classified record. Accordingly, the conferees expect that Federal courts, in making *de novo* determinations in section 552(b)(1) cases under the Freedom of Information law, *will accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record.* (emphasis added)

Conf.Rep. No. 93–1200, 93d Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. &

Ad.News 6290.[21] Examples cited by the conferees of information exempted under this category include restricted data, communication information, and intelligence sources and methods. *Id.*

■ Because Exemption 1 incorporates criteria established by Executive Order as the test for exemption for reason of national defense or foreign policy, it is necessary to determine first the appropriate Executive Order to apply to the case at bar and second the substantive criteria set forth in that Order. The claimed exemptions in each of the 14 documents then must be measured against those standards.

The question of "Which Order?" arises in this case because the documents were classified at the time when Executive Order No. 11652[22] was in effect. That Order has since been superceded by Executive Order No. 12065,[23] which remains in effect at present.

The very issue was put to and resolved by the Circuit Court of Appeals for the District of Columbia in *Lesar v. United States Department of Justice*, 636 F.2d 472 (D.C.Cir. 1980). Based on its interpretation of Executive Order No. 12065 and its analysis of underlying policy considerations, the Court ruled:

> *The general principle espoused here, then, is that a reviewing court should assess classification under the Executive Order in force at the time the responsible official finally acts.* (emphasis in original)[24]

*Id.* at 480. *Accord, Military Audit Project v. Casey*, 656 F.2d 724, at 736–37. *See also Allen v. CIA*, 636 F.2d 1287, 1291 (D.C.Cir. 1980), *on remand, Allen v. CIA*, 516 F.Supp. 653, at 654 (D.D.C.1981). *Cf. National Catholic Reporter Publishing Co. v. FBI,*

---

**21.** The courts often quote this or similar language from the legislative history of the 1974 Amendments when considering claims of exemption under § 552(b)(1). *See Military Audit Project v. Casey*, at 738; *Lesar v. United States Dep't of Justice*, 636 F.2d at 481; *Hayden v. National Security Agency*, 608 F.2d at 1387.

**22.** 3 C.F.R. 375 (1973). That Order took effect June 1, 1972.

**23.** 3 C.F.R. 190 (1979). That Order went into effect December 1, 1978.

**24.** The policy considerations include: (1) any other rule would require remand whenever a new Executive Order issues during the pendency of a FOIA appeal; and (2) any other rule would cause additional administrative burdens as well as additional delay in the processing of FOIA requests by the agencies.

514 F.Supp. 1149, at 1152 (D.D.C.1981) (subsequent classification under Executive Order No. 12065 "suffices to cure any procedural and substantive defects in classification" under prior Order).

█ Executive Order No. 11652 thus applies to the 14 documents under consideration.[25] *Lesar* described the standard of review for classifications under Executive Order No. 11652.

> The standard that the district court must apply in making its *de novo* review of the agency's classification decision, then, is whether unauthorized disclosure of the materials reasonably could be expected to cause the requisite harm. (footnote omitted)

636 F.2d at 481.

The standard corresponds directly to the security classification assigned to the particular document: "Top Secret", "Secret" or "Confidential". The two categories pertinent to the present lawsuit are "Secret" and "Confidential".[26] According to Executive Order No. 11652, the "requisite harm" to which the *Lesar* Court alluded and which

must be found in order to invoke Exemption 1 is "whether [the materials'] unauthorized disclosure could reasonably be expected to cause *serious damage to the national security*,"[27] for the "Secret" category, and "whether [the materials'] unauthorized disclosure could reasonably be expected to cause *damage to the national security*,"[28] for the "Confidential" category.

The Government has asserted that each document was reviewed on a paragraph-by-paragraph basis and was determined to be appropriately classified under Executive Order No. 11652.[29] In the affidavit of Robert D. Shea, the Government particularizes the Exemption 1 deletions as follows:

—Document 1[30] (Confidential)—Disclosure could reveal an intelligence source or method.[31]

—Document 2 (Secret)—(the same)

—Document 3 (Confidential)—(the same)

—Document 4 (Confidential)—(the same)

—Document 5 (Confidential)—(the same)

—Document 6 (Secret)[32]—Disclosure could reveal an intelligence source or

---

**25.** One document was subsequently reviewed and its classification reaffirmed. *See* Affidavit of Peter W. Kellen, Special Agent of the FBI, dated June 17, 1980. Executive Order No. 12065 therefore applies to this one document. *See* discussion, *infra*, note 33.

**26.** None of the 14 documents is classified "Top Secret". Four are classified "Secret", with the remainder classified as "Confidential".

**27.** Executive Order No. 11652 § 1(B), 3 C.F.R. 375 (1973) (emphasis added). Examples of "serious damage" provided by the Order include: "disruption of foreign relations significantly affecting the national security; significant impairment of a program or policy directly related to the national security; revelation of significant military plans or intelligence operations; and compromise of significant scientific or technological developments relating to national security." *Id.*

**28.** *Id.*, § 1(C) (emphasis added). No examples of the type of harm or damage intended in this category are supplied by the Executive Order.

**29.** Affidavit of Robert D. Shea, Special Agent of the FBI, dated August 28, 1978, ¶ 6.

**30.** The documents are reviewed here in the order listed in Appendix A. No significance

attaches to their arrangement in ascending, numerical order.

**31.** Executive Order No. 11652 § 5(B) exempts from the General Declassification Schedule the following categories of materials:

(1) Classified information or material furnished by foreign governments or international organizations and held by the United States on the understanding that it be kept in confidence.
(2) Classified information or materials specifically covered by statute, or pertaining to crytography, *or disclosing intelligence sources or methods.* (emphasis added)
(3) Classified information or material disclosing a system, plan, installation, project or specific foreign relations matter the continuing protection of which is essential to the national security.
(4) Classified information or material the disclosure of which would place a person in immediate jeopardy.
3 C.F.R. 380 (1973).

**32.** *See* Second Affidavit of Special Agent Robert D. Shea, dated November 6, 1978, p. 4. This is the only one of the 14 documents assessed in the second, rather than the first, affidavit of Agent Shea.

method and could reveal a foreign interest.

—Document 7 (Confidential)—Disclosure could identify the source and intelligence activity.[33]

—Document 8 (Confidential)—Disclosure could reveal an intelligence source or method.

—Document 9 (Confidential)—(the same)

—Document 10 (Confidential)—(the same)

—Document 11 (Secret)—Disclosure could reveal an intelligence source or method and could reveal a foreign interest.

—Document 12 (Confidential)—Disclosure could reveal an intelligence source or method.

—Document 13 (Confidential)—(the same)

—Document 14 (Secret)—(the same)

Agent Shea further elaborated the basis for classification to protect intelligence gathering methods and intelligence sources as follows:

**33.** Document 7 is the sole record that was reviewed for classification under Executive Order 12065. *See* note 25, *supra.* Section 1–301 of that Order prohibits any consideration for classification unless the information concerns, *inter alia,* "intelligence activities, sources, or methods." In addition, section 1–302 provides:

Even though information is determined to concern one or more of the criteria in Section 1–301, it may not be classified unless an original classification authority also determines that its unauthorized disclosure reasonably could be expected to cause at least identifiable damage to the national security.

The danger and damage identified by Special Agent Kellen were:

(1) Allowing hostile entity assessment of both general and specific intelligence collection capabilities . . . areas and targets which had been compromised or not compromised;

(2) Allowing countermeasures to be implemented, making future intelligence operations more difficult; and

(3) Compromising ongoing and planned intelligence operations.

Also, he stated that revelation of the identity of a source through release of specific and descriptive data compiled by the FBI could cause damage to the national security, including:

(1) Death of the source;

(2) Discontinuance of source's services . . .;

These intelligence methods remain in use by the United States Government today and loss of these methods would have a serious impact on the ability of the United States Government to obtain intelligence information vital to the national security. . . . Additionally, the disclosure of many of these documents would reveal the identity of intelligence sources. At the very least, exposure of sources would end the particular usefulness of the source for gathering further intelligence. . . . Moreover, if sources cannot be given assurances that their involvement will be kept confidential, or if commitments are not lived up to, intelligence sources will be hard to find. . . . Additionally, the release of the aforementioned information would place persons in immediate jeopardy.

Affidavit of Robert D. Shea, dated August 28, 1978, at 192–193.

■ The Court has undertaken its own paragraph-by-paragraph review of the documents in question and, with minor exceptions,[34] concludes that disclosure of the in-

(3) Damage to other ongoing intelligence activities; . . . .

Affidavit of Peter W. Kellen, dated June 17, 1980, pp. 7–8.

**34.** Those exceptions include:

Document 2—The particularized index states only that the (b)(1) exemptions are claimed because the material is classified "Confidential". The reason for the classification under Executive Order No. 11652 is not stated for pp. 2, 3–9, 10, 13–15, 17–18.

Document 6—(the same for pp. 25, 27–31)

—The deleted information appears solely related to information that is in the public domain on p. 39, ¶¶ 4 and 5.

Document 11—One exclusion is not mentioned in either the Shea or Binney affidavits on p. 1a.

—On p. 4, ¶ 2, 3, and 4; p. 10, ¶ 1; p. 11, ¶ 3; and p. 12 there is insufficient connection with a foreign interest. However, the other (b)(1) interests are validly asserted.

Document 13—The claimed category of exemption is not the same in the Binney affidavit as is written on the document itself.

Document 14—It is not sufficiently demonstrated that the material at p. 3, ¶ 1 cannot be segregated from the other classified material and disclosed.

Defendant FBI is instructed to submit to the Court a supplemental affidavit addressing and

formation deleted under Exemption 1 "could reasonably be expected to cause damage to the national security" in the particular respects outlined by the Government in its affidavits. The Court's *in camera* review substantially verifies the statements in the various *Vaughn* affidavits with respect to the contents of the documents and their classification status.[35]

Plaintiffs have argued strenuously that the withheld materials have not been shown to relate "even remotely" to the national security of the United States. Plaintiffs' Memorandum of Law at 2, 7, and 11. They maintain that, in order to prevail, defendants have the burden of showing that

> surveilling ... the financial affairs of lawful, domestic political organizations ... has a tangible connection to 'national defense or foreign policy.'

*Id.* at 8.

That argument must be rejected in light of the analysis and holdings of federal courts who have addressed the "confidential source" branch of Exemption 1. *See, e. g., Lesar v. United States Department of Justice*, 636 F.2d 477, 483 (D.C.Cir.1980) ("Although the FBI's surveillance of Dr. King strayed beyond the bounds of its initial lawful security aim, that does not preclude the possibility that the actual surveillance documents ... may nevertheless contain information of a sensitive nature, the disclosure of which could compromise legitimate secrecy needs." (footnote omitted).[36]

Plaintiffs have attempted to bolster their claim for disclosure with the fact that a number of previously classified documents in their files have been declassified upon review and during the course of this litiga-

tion, and have been found not to exhibit any significant connection to national defense or foreign policy. They also note that, in 1980, after further review, Agent Kellen found an error in the previous classification (and affidavits of Agent Shea) with respect to one of the 14 documents.

A similar argument was advanced in *Military Audit Project v. Casey*, 656 F.2d 724 (D.C.Cir. 1981) and rejected by the Court. Appellants had contended that the agency's decision midway through the litigation to declassify 2000 pages of documents was an admission of its fallibility and rendered its affidavits suspect. The Court wrote:

> We emphatically reject this line of argument. If accepted, it would work mischief in the future by creating a disincentive for an agency to reappraise its position, and when appropriate, release documents previously withheld. It would be unwise for us to punish flexibility, lest we provide the motivation for intransigence.
>
> Furthermore, this argument is based on the perverse theory that a forthcoming agency is less to be trusted in its allegations than an unyielding agency.

At 754. *See also National Catholic Reporter Publishing Co. v. FBI*, 514 F.Supp. 1149 (D.D.C.1981).

■ This Court agrees that it is against sound policy to penalize or discredit agencies because diligence in reviewing periodically the myriad of classified documents under their control discloses an error. After conducting its own review of the Government's affidavits and the 14 documents, the Court has failed to unearth any evidence to support a claim of bad faith.

---

clarifying these problems, to be reviewed *in camera* by the Court before it renders a final decision.

**35.** The Court is unable to present in greater detail its findings or analysis because to do so would necessarily reveal the nature of the exempted material, contrary to the intent of the framers of Exemption 1. *Cf. McCorstin v. United States Dep't of Labor*, 630 F.2d 242, 245 (5th Cir. 1980).

**36.** *See also Demetracopoulos v. FBI*, 510 F.Supp. 529, 531 (D.D.C.1981) (Courts must distinguish between the purpose of the investi-

gation and the purpose of withholding the documents. Even if the investigation did become improper, disclosure may be precluded under Exemption 1 where it would be likely to lead to physical harm to a foreign source.). *Cf. Military Audit Project v. Casey*, 656 F.2d 724, at 741 (D.C.Cir. 1981) ("That the threatened harm failed to materialize after any one particular disclosure does not prove that the risk is insignificant, and will not be likely to allay the insecurity felt by potential contractors [with the CIA].")

On the contrary, the Court finds that the FBI has observed the substantive directives embodied in the FOIA and Executive Order Nos. 11652 and 12065.

2. *Exemption 7(C)*

Subparagraph (7) of section (C) of the FOIA exempts from disclosure:

> investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source
> . . . .

Subdivision (C) is the subject of this section of the Court's opinion. Subdivision (D) is discussed *infra.* However, a preliminary matter to be addressed relates to both subdivisions because the initial clause of subparagraph (7), which has received varying interpretations by the courts, applies to both.

The language, "compiled for law enforcement purposes," has been strictly construed by some courts to require that an agency demonstrate a " 'colorable claim of rational nexus' between the activities being investigated and violations of federal laws." *Malizia v. United States Department of Justice,* 519 F.Supp. 338, at 347 (S.D.N.Y. 1981), citing, *inter alia, Lamont v. Department of Justice,* 475 F.Supp. 761, 773 (S.D. N.Y.1979).[37] On the other hand, a number of courts have taken the position that there is no such "rational nexus" requirement for withholding information under Exemption 7.[38]

The leading case adopting the latter point of view is *Irons v. Bell,* 596 F.2d 486 (1st Cir. 1979). Much like the present case, plaintiff in *Irons* argued that Exemption 7 could not apply because the "investigations involved were illegal surveillance and harassment of political organizations and activities." *Id.* at 470. Even though the Court voiced its opinion, in dicta, disapproving "the proposition that merely associating and expressing opposition to government policies, without more triggers an FBI obligation to conduct a lengthy investigation and infiltration of political and religious associations," [39] it found that "Congress did not intend even unwarranted FBI investigations to fall outside Exemption 7." *Id.* at 475.

That finding was premised upon the detailed historical and policy analysis to which the Court subjected Exemption 7. Among its conclusions were:

> (1) "[I]f the unjustified nature of an FBI investigation makes Exemption 7 inapplicable, material may be released even though it 'constitute[s] an unwarranted invasion of personal privacy.' 5 U.S.C. § 552(b)(7)(C)." [40]

---

37. *See also Demetracopoulos v. FBI,* 510 F.Supp. 529, 531 (D.D.C.1981); *Ramo v. Department of the Navy,* 487 F.Supp. 127, 131 (N.D.Cal.1979) (Although court accepts reasons supporting different rule, "[t]his Court adopts a liberal test that would require that the FBI show a sufficient connection between the conduct of the investigation and legitimate concerns for maintaining national security or preventing criminal activity."). *Cf. Weissman v. CIA,* 565 F.2d 692, 695 (D.C.Cir.1977) (CIA enabling act precludes police or law enforcement functions; therefore Exemption 7 is not available to that agency).

38. *See Kuehnert v. FBI,* 620 F.2d 662, 666 (8th Cir. 1980); *Irons v. Bell,* 596 F.2d 468, 474–75

(1st Cir. 1979); *Abrams v. FBI,* 511 F.Supp. 758 (N.D.Ill.1981). The issue was not reached in *Lesar v. United States Dep't of Justice,* 636 F.2d 472 (D.C.Cir.1980). However, the Court there distinguished *Weissman, supra* note 37, in which the agency lacked the inherent authority to conduct domestic investigations, from the situation, as here, where a law enforcement agency is invested with such authority "but later exercises this power without reference to any justifiable law enforcement purpose." *Id.* at 486–87 n.83, citing *Kuehnert* and *Irons.*

39. 596 F.2d at 472 (footnote omitted).

40. *Id.* at 474.

(2) "[L]oss of Exemption 7 due to unwarranted FBI activity would cost the society the cooperation of those who give the FBI information under an express assurance of confidentiality."[41]

(3) "[I]f exposure of the fact of an unjustified investigation will not deter the agency, we doubt that disclosure of the methods and persons used in that investigation will."[42]

(4) "[A]ttaching legal significance to the apparent lack of law enforcement purpose in an FBI investigation would place an unmanageable burden upon the district courts.... [W]e are hard pressed to conceive of a standard that would enable a district court to distinguish at an *in camera* proceeding between a colorably justifiable investigation that turned out to be a blind alley and an investigation that was bogus from the beginning."[43]

(5) "The second part of Exemption 7(D), allowing nondisclosure of confidential *information* as well as the identity of its source in a criminal law enforcement investigation was drafted specifically to protect the FBI."[44]

(6) The legislative history evidences "an intent that the investigatory records of law enforcement agencies are inherently records compiled for 'law enforcement purposes' within the meaning of Exemption 7."[45]

(7) "Even without disclosing the identity of confidential sources, appellees's FOIA request has had exactly the effect envisioned by Congress; questionable practices by the FBI have been brought to light."[46]

This Court is persuaded that the better rule is that one adopted by the courts in *Irons, Kuehnert* and *Abrams*. This opinion is not necessary to the decision in this case, however, because the Court is also persuaded, as a result of its *in camera* examination of the 14 documents, that the Government clearly has passed Judge Weinfeld's test of "at least a colorable claim of a rational nexus" between its investigation and suspected violations of federal law(s). Therefore, if other conditions are met, the Government's withholding of information under Exemption 7(C) or (D) is authorized in this case.

■ The Court has previously considered challenges to Exemption 7(C) withholdings in *Katz v. United States Department of Justice*, 498 F.Supp. 177 (S.D.N.Y.1979). There the Court observed:

It has frequently been held that the proper analysis under the (b)(7)(C) exemption is to balance the public interest in the disclosure of such information against the privacy invasion involved. (citations omitted)

*Id.* at 181. That formulation has since been reiterated in numerous cases. *See Fund for Constitutional Government v. National Archives and Records*, 656 F.2d 856, at 862 (D.C.Cir.1981); *Ferri v. Bell*, 645 F.2d 1213, 1217 (3d Cir. 1981); *Lesar v. United States Department of Justice*, 636 F.2d 472, 486 (D.C.Cir.1980). The same analytical framework has guided the Court's *in camera* examination in this case.

■ As a result of the careful review of the instances where the Government has deleted information from the 14 documents,

41. *Id.*

42. *Id.* (footnote omitted).

43. *Id.* The Court further noted that if such a pre-condition were read into Exemption 7 law enforcement agencies might feel compelled to recommend frivolous prosecutions in order to protect their sources and methods. *Id.*

44. *Id.* at 475.

45. *Id.*

46. *Id.* It is also worth noting that civil litigants, injured by official, unlawful conduct, may have specific discovery rights available to them that are not generally available to the public in actions under the FOIA. *See id.* at 475 n.15 ("FOIA exemptions have nothing to do with the right of public officials to obtain records in an effort to prosecute official law breakers. *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)."). *Cf. NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n.10, 95 S.Ct. 1504, 1513 n.10, 44 L.Ed.2d 29 (1975) (the FOIA was not intended to benefit private litigants).

claiming exemption under (b)(7)(C), the Court has confirmed that information, including personal names, only was deleted which concerned or could affect individuals whose personal privacy should be protected. The types of individuals involved include:

(1) NCLC members or sympathizers about whom sensitive, personal data was collected;

(2) third parties interviewed by or who contacted the FBI with respect to the NCLC;

(3) FBI agents;

(4) other governmental employees whose names appear in the disputed files.

*See* Second Affidavit of David G. Binney, dated August 25, 1978, ¶ 7(C).

Plaintiffs have objected to the assertion of Exemption 7 for the various names, especially those of the FBI agents who participated in the investigation in some manner. *See* Plaintiffs' Supplemental Memorandum of Law at 5–6. They argue that there is a public interest in disclosure of those names and that the only interest of the FBI in withholding the identities is to cover-up illegal activities. *Id.* at 7.

The Court disagrees. It repeatedly has been held that the balance in a case such as this one should be struck in favor of protection of individual privacy interests.[47] The reasoning underlying this result was very recently expounded with respect to those who are associated with an investigation or are targets of an investigation. *Fund for Constitutional Government v. National Archives and Records Service*, 656 F.2d 856 (D.C.Cir. 1981). The Court explained that the mere fact that an individual's name surfaces in connection with an investigation may become

'the subject of rumor and innuendo.' Thus . . . information in an investigatory file tending to indicate that a named individual has been investigated for suspected criminal activity is, at least as a threshold matter, an appropriate subject for exemption under (7)(C). (citations omitted)

At 863. Release of information that an individual has been investigated but not charged with a crime is the type of publication that

represents a severe intrusion on the privacy interests of the individual[ ] in question and should yield only where exceptional interests militate in favor of disclosure. [footnote omitted]

*Id.* at 866.[48] In addition the Court held that government officials do not forfeit the protection of their personal privacy interests under the FOIA merely because they are public figures/employees. At 864. *Accord, Lesar v. United States Department of Justice*, 636 F.2d 472, 488 (D.C.Cir.1980) (FBI agents; FBI informants; family and associates of Dr. Martin Luther King); *Kuehnert v. FBI*, 620 F.2d 662, 667 (8th Cir. 1980) (third party interview with FBI; identity of target of investigation); *Malizia v. United States Department of Justice*, at 349 (FBI agents; nonpolicymaking government officials associated with the investigations; third parties investigated or questioned by the FBI and those cooperating in its investigations; third parties "simply mentioned in a FBI report.").

Giving due weight to the competing interests of the parties to this action, and considering each of the documents as a whole as well as each deletion in isolation, the Court concludes that the source names and identifying information in those docu-

---

47. *E. g., Lesar v. United States Dep't of Justice*, 636 F.2d at 488; *Kuehnert v. FBI*, 620 F.2d 662 (8th Cir. 1980); *Malizia v. United States Dep't of Justice*, at 348; *Katz v. United States Dep't of Justice*, 498 F.Supp. at 181; *Lamont v. Department of Justice*, 475 F.Supp. 761, 777 (S.D. N.Y.1979).

48. *See also Baez v. Department of Justice*, 647 F.2d 1328, at 1338 (D.C.Cir.1980) ("To release

the identities of these individuals and the information collected about them where it does not pertain to [plaintiff] would announce to the world that these individuals were targets of an FBI investigation. There can be no clearer example of an unwarranted invasion of personal privacy than to release to the public that another individual was the subject of an FBI investigation.").

ments may be withheld from public disclosure under Exemption 7(C) of the FOIA.[49]

### 3. *Exemption 7(D)*

Exemption 7(D) has been claimed in order "to protect the identities of persons interviewed", "to protect confidential relationships with other agencies" and to protect "the identities of confidential informants of the FBI who furnish information on a regular basis." [50]

■ The threshold inquiry under Exemption 7(D) is whether the sources the FBI seeks to protect are "confidential sources" within the intendment of 5 U.S.C. § 552(b)(7)(D). The Court finds that they are. Confidential sources are not only paid informants. Any provider of information is considered a source, whether that provider is a natural person, a corporate entity, or another governmental body.[51]

■ The second inquiry is whether the individuals involved cooperated with or provided information to the agency with the expectation that their identities and information would be kept in confidence.[52] Such a promise of confidentiality is presumed in the context of a law enforcement investigation, especially one conducted by the FBI.[53] As Judge Weinfeld explained in *Malizia v. United States Department of Justice*, at 350:

> The Court ... adheres to the 'functional' or 'common sense' approach usually employed to find such confidences when an agency such as the FBI ' "depends for its existence upon information being supplied by individuals who in many cases would suffer severe detriment if their identities were known." ' (footnote omitted)

*See T.V. Tower, Inc. v. Marshall*, 444 F.Supp. 1233, 1235 (D.D.C.1978).

---

**49.** In Document 6, Exemption 7(C) is claimed throughout pages 22–24, allegedly to protect the privacy interest of various agents, informers and third party sources providing information to the FBI. However, even a cursory review of those three pages reveals a perplexing inconsistency and seemingly *ad hoc* approach to the deletion of names and identifying information. Accordingly, the Court instructs the defendant FBI to include in its supplemental affidavit for *in camera* review further explanation of the rationale for the claimed exemption on those pages.

**50.** Second Affidavit of David G. Binney, dated August 25, 1978, ¶ 7(D).

**51.** *See Lesar v. United States Dep't of Justice*, 636 F.2d at 489; *Keeney v. FBI*, 630 F.2d 114, 117 (2d Cir. 1980); *Church of Scientology of Cal. v. United States Dep't of Justice*, 612 F.2d 417, 426 (9th Cir. 1979); *Malizia v. United States Dep't of Justice*, at 350. *See also* Conf. Rep. No. 93–1200, 93d Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Ad.News, 6285, 6291. (1974 FOIA Amendments)

**52.** *See, e. g., Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir. 1977).

**53.** *See Sands v. Murphy*, 633 F.2d 968, 970 (1st Cir. 1980); *Malizia v. United States Dep't of Justice*, at 350; *Abrams v. FBI*, 511 F.Supp. at 763 ("an assurance of confidentiality can be reasonably inferred from any exchange between a source and the FBI ...."); *Nunez v. Drug Enforcement Administration*, 497 F.Supp. 209, 212 (S.D.N.Y.1980); *Ramo v. Department*

*of the Navy*, 487 F.Supp. 127, 133 (N.D.Cal. 1979). Even "indirect" informers are protected under Exemption 7(D), according to the Court in *Sands v. Murphy*, 633 F.2d 968, 970 (1st Cir. 1980). There the Court persuasively argued:

> [The policy of 7(D)] is to enlarge the flow of information to the final federal enforcement agency by protecting informers against risks of reprisal or loss of privacy.... [W]hen a person gives information to any law enforcement agency (including state, national, and foreign law enforcement agencies) under an express or implied agreement by the agency with which the informer is in direct contact that his name will be held confidential, it is implied that his name will be held confidential by any law enforcement agency to which the contacted agency transmits the material. Such implied promises of protection are so universal that any law enforcement agency which receives information transmitted by another law enforcement agency takes it under the implied promise that it will protect the names of informers which the transmitting agency received in confidence.

Despite this presumption, the Court is concerned over several inconsistencies it has observed in the application of Exemption 7(D). They are: (1) Document 1—information on p. 1 relating to informants PG T–4 and PG T–6; (2) Document 5—information other than informant symbol numbers and file numbers on p. 1, ¶ 2; and (3) Document 12—information other than T symbols withheld at p. 4, ¶ 2. In its supplemental, *in camera* affidavit the agency should address these concerns.

**440**

██ Accordingly, the Court finds that the Exemption 7(D) withholdings—including the names of FBI agents, informants, and their symbols, as well as the names and identifying information of third parties—were in accordance with the law.

B. Procedural Requirements

In his main affidavit, Special Agent Robert D. Shea avers:

> My examination was conducted in strict adherence to the standards and criteria found in EO 11652. When I determined a particular document carried the appropriate classification, I did not make any additional markings on the document whatsoever. Only when I made a change in classification were markings made on the document in keeping with the requirements set forth in Section 4 of EO 11652. . . .

Affidavit of Robert D. Shea, dated August 28, 1978, ¶ 3(d). He further stated, *id.* ¶ 6, that the documents (including the 14 presently under review) "are currently and properly classified in accordance with the substantive and procedural requirements of EO 11652."

██ Section 4 of Executive Order 11652 requires for each classified document that it appear on its face: (1) the classification; (2) whether it is subject to the General Declassification Schedule; (3) the office of origin; (4) the date of preparation and classification; and (5) where practical, which portions of the document have been classified. Even though plaintiffs have not raised any issue concerning proper compliance with classification procedures in this action, and even though the failure to comply with procedural standards does not compel an agency to turn over information in response to a FOIA request,[54] the Court has undertaken to determine for itself whether the Government affidavits are accurate with respect to the 14 documents. Its finding is that those affidavits correctly state that the Section 4 requirements of Executive Order No. 11652 have been satisfied.

---

**54.** *See, e. g., Allen v. CIA*, 636 F.2d 1287, 1292 n.27 (D.C.Cir.1980), *on remand, Allen v. CIA*, 516 F.Supp. 653, at 654 (D.D.C.1981); *Lesar v.*

CONCLUSION

After careful examination of the 14 documents submitted by the parties for *in camera* inspection, the Court finds that there are no material facts in dispute and that, with the exceptions specified in notes 34, 49 and 53, defendants are entitled to judgment as a matter of law under the Freedom of Information Act, 5 U.S.C. § 552. Partial summary judgment is accordingly granted to defendants. Judgment is conditioned, however, upon receipt of a satisfactory supplemental affidavit from defendant FBI with respect to the matters discussed in notes 34, 49 and 53, *supra,* no later than two weeks from the date of this decision.

With respect to plaintiffs' claims for injunctive and declaratory relief, the Court reaffirms the decision of Judge Owen, dated February 15, 1977, dismissing those claims, and grants defendants' motion to dismiss.

It is So Ordered.

### APPENDIX A

According to the affidavits of David G. Binney, Special Agent of the FBI, assigned to a supervisory position in the Records Management Division of that agency, as well as the information supplied with each of the 14 documents by the agency, the following are the exemptions of FOIA upon which the FBI bases its nondisclosure of information that plaintiffs seek. The exemptions refer to one of the subparagraphs of 5 U.S.C. § 552(b).

| Document | Serial No. | Classification | Claimed Exemptions |
|---|---|---|---|
| 1 | 321 | Confidential | (1), (7)(C), (7)(D) |
| 2 | 1008 | Secret | (1), (7)(C), (7)(D) |
| 3 | 1118 | Confidential | (1), (7)(D) |
| 4 | 1199 | Confidential | (1) |
| 5 | 1298 | Confidential | (1), (7)(C), (7)(D) |
| 6 | 1324 | Secret | (1), (7)(C), (7)(D) |
| 7 | 1345 | Confidential | (1), (7)(D) |
| 8 | 1355 | Confidential | (1), (7)(C), (7)(D) |
| 9 | 1367 | Confidential | (1), (7)(D) |
| 10 | 1392 | Confidential | (1) |
| 11 | 1395 | Secret | (1), (7)(C), (7)(D) |

*United States Dep't of Justice*, 636 F.2d at 484–85.

| Document | Serial No. | Classification | Claimed Exemptions |
| --- | --- | --- | --- |
| 12 | 1398 | Confidential | (1), (7)(C), (7)(D) |
| 13 | 1404 | Confidential | (1), (7)(D) |
| 14 | none | Secret | (1), (7)(D) |